351 S.E.2d 358

**Gloria DePOND**

v.

**Honorable Glen B. GAINER, Jr., Auditor of West Virginia.**

**No. 16902.**

Supreme Court of Appeals of West Virginia.

March 12, 1986.

Dissenting Opinion July 16, 1986.

Concurring Opinion July 24, 1986.

Larry Harless, Morgantown, for appellant.

Charlie Brown, Atty. Gen., Thomas N. Trent, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Justice:

The petitioner, Gloria DePond, widow of the late Honorable Frank J. DePond, Chief Judge of the Circuit Court of Monongalia County, seeks a writ of mandamus to compel respondent Glen B. Gainer, Jr., Auditor of the State of West Virginia, to "authorize and direct" the payment of her spousal annuity under West Virginia Code § 51–9–6b (1981 Replacement Vol.). The West Virginia Judicial Association, as amicus curiae, emphasizes the importance of the doctrine of stare decisis and argues that the theory of defense raised by the respondent is unconstitutional.

The late Honorable Frank J. DePond served with distinction for more than eight years as Circuit Judge of Monongalia County from January 1, 1977 until his tragic death on September 2, 1985 in an automobile accident in which the petitioner was severely injured. Previously, he had served on active duty in the United States Army from 1943 to 1946, as a Hearing Examiner with the Workmen's Compensation Commission from 1961 through 1968, and as City Attorney for the City of Morgantown from 1969 through 1976. Thus, over his distinguished career, Judge DePond had accumulated a total of twenty-eight years [1] of combined military, other governmental, and judicial service credit as of the date of his death.

West Virginia Code § 51–9–6b (1981 Replacement Vol.) provides, in relevant part, that, "There shall be paid ... an annuity to the widow of a judge, who, at death, is eligible for the retirement benefits provided by sections six, six-a or eight [§§ 51–9–6, 51–9–6a or 51–9–8] of this article, or who, at death, has ... sixteen years" of service. And provides that, "The annuity granted hereunder shall accrue monthly and shall be due and payable in monthly installments on the first business day of the month following the month for which the annuity shall have accrued. Such annuity shall commence on the first day of the month in which said judge dies and shall terminate upon the death or remarriage of the annuitant."

Under West Virginia Code § 51–9–6 (1981 Replacement Vol.), "[A]ny person who is now serving, or who shall hereafter serve, as a judge of any court of record of this State ... and shall have served as such judge for a period of not less than twenty-

1. As was noted in footnote thirty-seven of *In re Dostert*, 174 W.Va. 258, 324 S.E.2d 402, 419 (1984), many legislative officers and employees who participate in public employees' retirement pursuant to a proviso in West Virginia Code § 5–10–2(6) (Supp.1985) receive full-time credit for part-time service. For example, a legislator who serves a sixty day session receives service credit of one full year in the public employees' retirement system. Additional beneficiaries of this practice include county commissioners, city councilmen, county board of education members, and other "members of the legislative body of any political subdivision" under West Virginia Code § 5–10–2(6) (Supp.1985). This occurs administratively despite language to the contrary in West Virginia Code § 5–10–14(a) (1979 Replacement Vol.), which provides, "[I]n no case shall less than ... ten months of service rendered in any calendar year be credited as a year of service...." Similarly, in footnote eighteen of *In re Dostert*, 174 W.Va. at 268, 324 S.E.2d at 411, this Court observed that prosecuting attorneys, to whom service credit is later granted in the judicial retirement system under West Virginia Code § 51–9–6 (1981 Replacement Vol.), are more often than not part-time officers. Therefore, under both the public employees' and judges' retirement systems, full-time credit has traditionally been granted for part-time service. For this reason, we held in *In re Dostert*, 174 W.Va. at 274, 324 S.E.2d at 418 n. 33, that other "government service in this State includes full or part time service...." (Emphasis added).

four years, regardless of age, shall ... be paid from the fund annual retirement benefits." Under West Virginia Code § 51–9–6 (1981 Replacement Vol.), "[M]ilitary service, or its equivalent, rendered during a period of compulsory military service, 'shall be considered as served' ... for the purpose of determining eligibility for disability and retirement benefits." *In re Dostert,* 174 W.Va. 258, 324 S.E.2d 402, 417 (1984) (Footnotes omitted); *affirmed in Oakley v. Gainer,* 175 W.Va. 115, 331 S.E.2d 846, 852 (1985). Under West Virginia Code § 51–9–6 (1981 Replacement Vol.), "[S]ervice to this State or any of its political subdivisions 'shall qualify as years of service'...." *In re Dostert,* 174 W.Va. 274, 324 S.E.2d at 418 (Footnote omitted); *affirmed in Oakley v. Gainer,* 175 W.Va. at 121, 331 S.E.2d at 852. Furthermore, "[G]overnment service in this State includes full or part time service, whether by employment, election, or appointment, to the State of West Virginia or any of its political subdivisions." *In re Dostert,* 174 W.Va. at 274 n. 33, 324 S.E.2d at 418 n. 33; *affirmed in Oakley v. Gainer,* 175 W.Va. at 121, 331 S.E.2d at 852.

■ Clearly, under the relevant criteria, Judge DePond had twenty-eight years of creditable service under West Virginia Code § 51–9–6 (1981 Replacement Vol.). His contributions corresponding to this creditable service were deposited by the respondent into the judges' retirement fund. Thus, at the time of his death, Judge DePond had twenty-eight years of credited service in the judges' retirement system. This exceeded the twenty-four year requirement for eligibility for retirement benefits by four years, thus entitling the petitioner to a spousal annuity under West Virginia Code § 51–9–6b (1981 Replacement Vol.) commencing on September 1, 1985.

Granted the self-evidence of the widow DePond's entitlement to a spousal annuity, we are puzzled by the respondent's refusal to perform his lawful duty to expedite processing for payment. *See also Oakley v. Gainer,* 175 W.Va. 120–124, 331 S.E.2d at 851–55. In the present action, the respondent musters another attempt to evade his

statutory and administrative obligations with respect to the payment of an annuity to the surviving spouse of a judicial officer. He does not contradict the Judge's death, the couple's marriage, or the spouse's eligibility to receive a widow's annuity. Indeed, the respondent agrees that the petitioner is entitled to an annuity under the law, conceding that he "is not here involved in an argument over the legality or wisdom of ... *In re Judge Pierre Dostert of the Circuit Court of Jefferson County,* 174 W.Va. 258, 324 S.E.2d 402 (1984), nor the effect of the follow up case of *Oakley v. Gainer,* 175 W.Va. 115, 331 S.E.2d 846 (1985)." In this regard, the West Virginia Judicial Association, as amicus curiae on behalf of the petitioner, correctly notes the importance of stare decisis to judges who have become members of the judges' retirement system in reliance upon this settled law.

The respondent's most recent contrivance is that the execution of his duties with respect to the payment of a spousal annuity under the judges' retirement system is contingent upon exercise of the chief executive's "obviously discretionary" role under West Virginia Code § 51–9–9 (1981 Replacement Vol.) to certify entitlement to the receipt of judges' retirement system benefits. After an unsuccessful assertion of no obligation to act in the face of a gubernatorial order to the contrary in *Oakley v. Gainer,* 175 W.Va. at 120, 331 S.E.2d at 851, the respondent now takes one step back and asserts no obligation to act in the absence of a gubernatorial order. In this respect, the respondent's hesitancy to perform his legal obligations under the judges' retirement system, particularly when widows' annuities are involved, is perplexing.

West Virginia Code § 51–9–9 (1981 Replacement Vol.), which was enacted as an original provision of the judges' retirement system statute, *see* 1949 W.Va. Acts ch. 34, provides that:

Before any person shall be entitled to retirement benefits under the provisions hereof, he shall submit proof of his eligibility for such benefits to the governor, and if such judge be then in office, he shall at the same time tender to the governor his resignation as judge upon condition that, if such resignation be ac-

cepted, he be paid retirement benefits as herein provided. Thereupon the governor shall make such investigation as he shall deem advisable and, if the governor shall determine that such person is entitled to retirement benefits under the provisions hereof, the governor shall accept the resignation and certify said facts and the amount of retirement benefits to be paid to said retired judges by a written order to be filed in the office of the secretary of state. The secretary of state shall thereupon file a certified copy of said order with the State auditor. The resignation so accepted shall create a vacancy in said office of judge which shall be filled by appointment or election as provided by law.

The primary purpose of the statute is to certify entry in the public record entitlement to property rights created under the judges' retirement system in a manner that will ensure the expeditious receipt of benefits and annuities by qualified judges and their surviving spouses. In *Wagoner v. Gainer*, 167 W.Va. 139, 279 S.E.2d 636, 643 (1981), this Court held that "the West Virginia Retirement System for Judges creates contractually vested property rights for retired and active participating plan members...." These property rights, however, are not due until certain requirements are met. For example, in order to be eligible for the receipt of benefits under the judicial retirement system, a judge must have twenty-four years of credited service; sixteen years of credited service and be sixty-five years old; or eight years of judicial service after the age of sixty-five years. *See* West Virginia Code § 51–9–6 and –6a (1981 Replacement Vol.). Therefore, prior to payment of benefits in the judges' retirement system and certification to the constitutional status of retired judge, a procedure is provided under West Virginia Code § 51–9–9 (1981 Replacement Vol.) by which entitlement to those property rights is established and documented as a matter of public record. The simplicity of the process designed by the legislature indicates an intention that receipt of benefits by qualified judges and their surviving spouses be secured as expeditiously as possible.

As noted by this Court long ago in Syllabus Point 2 of *Marcum v. Ballot Commissioners*, 42 W.Va. 263, 26 S.E. 281 (1896):

A ministerial act or duty is one which is to be performed under a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to or exercise of the judgment of the one doing it upon the propriety of the act's being done.

Clearly, the determination to be made by the governor under West Virginia Code § 51–9–9 (1981 Replacement Vol.), is whether the judge concerned "is entitled to retirement benefits under the provisions hereof." Moreover, under West Virginia Code § 51–9–9 (1981 Replacement Vol.), "the governor shall accept the resignation and certify facts and the amount of retirement benefits to be paid" for any person who is entitled to benefits in the judges' retirement system statute. From this mandatory language, the ministerial character of chief executive responsibility under West Virginia Code § 51–9–9 (1981 Replacement Vol.) becomes manifestly clear. *See* Syl. pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969) ("The word 'shall' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation."); *see also Allen v. Human Rights Commission*, 174 W.Va. 139, 147 n. 10, 324 S.E.2d 99, 108 n. 10 (1984), and cases cited therein. Thus, fixation of entitlement to judges' retirement benefits, acceptance of resignation from active status which is premised thereon, and the certification to the constitutionally official status of retired justice or judge is a ministerial duty reposed in the chief executive.

Unquestionably, to accept the respondent's plea to construe West Virginia Code § 51–9–9 (1981 Replacement Vol.) to impart chief executive discretion in the acceptance of judicial resignations would, as the petitioner and West Virginia Judicial Association point out, raise serious separation of powers problems. For example, the spectre that a chief executive could hold

hostage a judge who tenders a conditional resignation by refusal to transmit an order pursuant to West Virginia Code § 51-9-9 (1981 Replacement Vol.) to the secretary of state certifying eligibility to receive retirement benefits under the judges' retirement system would clearly contradict fundamental separation of powers principles. To breathe discretion into the chief executive's role in the judges' retirement system would be to place each judge's compensation at the peril of the chief executive's good will, a most fundamental evil which separation of powers is designed to prevent. As explained in Alexander Hamilton's rationale for the compensation clause in the federal constitution, "In the general course of human nature, a power over a man's subsistence amounts to a power over his will. And we can never hope to see realized in practice, the complete separation of the judicial from the legislative power, in any system which leaves the former dependent for pecuniary resources on the occasional grants of the latter." *The Federalist No. 79* (A. Hamilton). This rationale applies with equal force to the executive branch.[2] Moreover, granted the frequency of involvement of the chief executive[3] and other executive officers and agencies, as well as issues in which the chief executive has an interest, in litigation before members of the judges' retirement system, the potentially coercive power to deny acceptance of tendered resignations based upon asserted ineligibility to receive judges' retirement system benefits would invade judicial independence and the fundamental constitutional theory of separation of powers, which this Court has consistently reiterated "must be strictly construed and closely followed." Syl. pt. 1, *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981); *see also In re Dostert*, 174 W.Va. at 269 n. 21, 324 S.E.2d at 413 n. 21; *State ex rel. Quelch v. Daugherty*, 172 W.Va. 422, 306 S.E.2d 233, 235 (1983); *State ex rel. Steele v. Kopp*, 172 W.Va. 329, 305 S.E.2d 285, 293-94 (1983); *O'Connor v. Margolin*, 170 W.Va. 762, 296 S.E.2d 892, 7898 (1982); *State ex rel. State Building Commission v. Bailey*, 151 W.Va. 79, 83, 150 S.E.2d 449, 452 (1966); *State ex rel. Richardson v. County Court*, 138 W.Va. 885, 890-91, 78 S.E.2d 569, 573-74 (1953); *State v. Huber*, 129 W.Va. 198, 209-11, 40 S.E.2d 11, 18-19 (1946); *Sims v. Fisher*, 125 W.Va. 512, 524-25, 25 S.E.2d 216, 222 (1943). Therefore, the exercise of gubernatorial discretion, which the respondent pleads in defense of his refusal to accept and approve judicial retirement, would clearly violate separation of powers.

■ It is important to recognize that retirement benefits similar to those provided by the judges' retirement system are available to members of the judiciary under the public employees' retirement system.[4]

---

**2.** We must not fault Hamilton for failure to foresee legislative creation of a system that would raise the spectre of executive control of judicial compensation.

**3.** *See, e.g., Queen v. Moore*, 176 W.Va. 27, 340 S.E.2d 838 (1986); *Jones v. Rockefeller*, 172 W.Va. 30, 303 S.E.2d 668 (1983); *State ex rel. Board of Education v. Rockefeller*, 167 W.Va. 72, 281 S.E.2d 131 (1981); *State ex rel. Brotherton v. Moore*, 159 W.Va. 934, 230 S.E.2d 638 (1976); *State ex rel. Maloney v. McCartney*, 159 W.Va. 513, 223 S.E.2d 607 (1976); *State ex rel. Moore v. Blankenship*, 158 W.Va. 939, 217 S.E.2d 232 (1975); *Russell Transfer, Inc. v. Moore*, 158 W.Va. 534, 212 S.E.2d 433 (1975); *State ex rel. Kelly v. Moore*, 156 W.Va. 780, 197 S.E.2d 106 (1973); *State ex rel. State Building Commission v. Moore*, 155 W.Va. 212, 184 S.E.2d 94 (1971); *State ex rel. State Building Commission v. Bailey*, 151 W.Va. 79, 150 S.E.2d 449 (1966); *State ex rel. Smith v. Gore*, 150 W.Va. 71, 143 S.E.2d 791 (1965); *State ex rel. Smith v. Kelly*, 149 W.Va. 381, 141 S.E.2d 142 (1965); *State ex rel. Neal v. Barron*, 146 W.Va. 602, 120 S.E.2d 702 (1961).

**4.** Under West Virginia Code § 5-10-2(6) (Supp. 1984), the term "Employee," as used in the West Virginia Public Employees Retirement Act, "means any person who serves regularly as an officer ... and whose compensation is payable in whole or in part by any political subdivision...." As this Court noted in *In re Dostert*, 174 W.Va. at 265-66, 324 S.E.2d at 409, "This definition includes Article VIII judicial officers." The formula for calculating the retirement annuity for a member of the public employees' retirement system under West Virginia Code § 5-10-22 (1979 Replacement Vol.) is "two percent of his final average salary multiplied by the number of years, and fraction of a year, of his credited service in force at the time of his retirement." Under West Virginia Code § 5-10-2(15) (Supp.1985), the term "final average salary," for nonlegislators with more than five years of credited service, means "the average of the highest annual compensation received ... during any period of three consecutive years of his credited service contained within his ten years of credited service immediately preceding the

Yet, unlike the procedure for securing retirement benefits in the substituted judges' retirement system, no participation by either the chief executive or the auditor is required for receipt of retirement benefits in the public employees' retirement system. A judge, eligible to retire in the public employees' retirement system, must simply announce his retirement and notify the public employees retirement system. Subjected to analysis, this fundamental discrepancy between the two retirement systems in which judges may participate would present fatal equal protection complications, except for the ministerial nature of the participation by the chief executive and the auditor.

Chief executive participation in the judges' retirement process is a remnant of administrative structural deficiencies which existed in the judiciary in this State prior to passage of the Judicial Reorganization Amendment of 1974. As one commentator noted, "With the passage, on November 5, 1974, of the Judicial Reorganization Amendment to the West Virginia Constitution, a new era of judicial administration began for West Virginia. Central to this new judicial article was the unification of lower state courts under the general supervision of the Supreme Court of Appeals of West Virginia." Note, *Judicial Reform in West Virginia: The Magistrate Court System*, 79 W.Va.L.Rev. 304, 304 (1977) (Footnotes omitted); *see also* Berry, *A Proposed New Judicial Article for West Virginia*, 76 W.Va.L.Rev. 481, 483 (1974) ("The proposed amendment would afford a unified court system for this State. This is the essential requirement for modernizing all court systems.").

At the time of its enactment, three types of judges of courts of record were eligible for participation in the judges' retirement

---

date of his employment with a participating public employer last terminated...."

Therefore, a member of the judiciary who chose to participate in the public employees' retirement system would be eligible to receive, at age sixty, under West Virginia Code § 5–10–20 (Supp.1985), a full retirement annuity ranging from between ten percent of his final average salary after five years of credited service, three of which could be judicial service along with two years of military or other governmental service, to more than seventy-five percent of his final average salary after more than thirty-seven and one-half years of governmental service, three of which could be judicial service along with thirty-three and one-half years of military or other governmental service. Thus, the potential full benefit under the public employees' retirement system is (1) greater than the benefit available under the judges' retirement system; (2) available five years earlier than the benefit for judges with less than twenty-four years of credited service in the judges' retirement system; and, (3) less expensive because contributions of between three and five-tenths and four and five-tenths percent of salary earned under the public employees' retirement system, *see* West Virginia Code § 5–10–29 (1979 Replacement Vol.) are required, as opposed to mandatory contributions of six percent under the judges' retirement system, *see* West Virginia Code § 51–9–4 (1981 Replacement Vol.).

In addition, deferred retirement and early retirement plans available under the public employees' retirement system are not available under the judges' retirement system. Under West Virginia Code § 5–10–21(a) (Supp.1985), a member of the public employees' retirement system with five years of credited service who leaves the system prior to the age of sixty is entitled to an annuity at age sixty-two. Under West Virginia Code § 5–10–21(b) (Supp.1985), a member of the public employees' retirement system with ten years of credited service is entitled, at age fifty-five, to the actuarial equivalent of his deferred retirement at age fifty-five. Under West Virginia Code § 5–10–21(c) (Supp.1985), a member of the public employees' retirement system with twenty years of credited service is entitled, regardless of age, to the actuarial equivalent of his deferred retirement at age fifty-five. Finally, under West Virginia Code § 5–10–21(d) (Supp.1985), a member of the public employees' retirement system with thirty years of credited service is entitled, regardless of age, to the actuarial equivalent of the benefit which would have been received at the age of sixty when entitlement to full benefits would have commenced. Therefore, a member of the judiciary who chose to participate in the public employees' retirement system would be eligible to receive full deferred retirement benefits at age sixty-two with five years of credited service; immediate actuarial equivalent retirement benefits at age fifty-five with ten years of credited service; deferred actuarial retirement benefits commencing at age fifty-five with twenty years of credited service; or, immediate actuarial equivalent retirement benefits at any age after thirty years of credited service. Obviously, the options under the public employees' retirement system are more numerous than the options under the judges' retirement system. Under the judges' retirement system, a member is either immediately eligible for full benefits or ineligible for any benefits.

system. First, West Virginia Constitution art. VIII, § 1 provided, "The supreme court of appeals shall consist of [five] judges...." With respect to their compensation, West Virginia Code § 6–7–2 (1949) provided, "The salary of each of the judges of the supreme court of appeals shall be twelve thousand five hundred dollars per annum." Second, West Virginia Constitution art. VIII, § 10 provided, "The State shall be divided into [twenty-four] circuits. For the circuit hereinafter called the first, two judges shall be elected, and for each of the other circuits one judge shall be elected by the voters thereof." With respect to their compensation, West Virginia Code § 6–7–4 (1949) provided that, in addition to annual salaries to be paid out of the state treasury in proportion to population served, "A county court ... may pay the judge of the circuit court additional compensation...." Finally, West Virginia Constitution art. VIII, § 19 provided, "The Legislature may establish courts of limited jurisdiction within any county, incorporated city, town or village...." With respect to their compensation, annual salaries to be paid out of county treasuries were established by legislative enactment and amendment. See, e.g., 1915 W.Va.Acts ch. 109, § 9 (creating court of common pleas of Kanawha County and establishing annual compensation at forty-five hundred dollars); 1921 W.Va.Acts ch. 166 (increasing annual salary of judge of criminal court of Raleigh County to forty-five hundred dollars).

Pursuant to West Virginia Constitution art. VIII, § 19, the legislature both created and abolished courts of limited jurisdiction over the years prior to the enactment of the judicial retirement system statute. As of 1949, criminal courts existed in Harrison, Marion, McDowell, Mercer, Raleigh, and Wyoming counties; domestic relations courts existed in Cabell and Kanawha counties; common pleas courts existed in Cabell and Kanawha counties; and, intermediate courts existed in Kanawha and Ohio counties. See 33 West Virginia Blue Book 250 (1949). Therefore, at the time of the creation of the judges' retirement system in 1949, membership was available to five

judges of the supreme court of appeals, twenty-five circuit judges, six criminal court judges, two domestic court judges, two common pleas court judges, and two intermediate court judges. See 33 West Virginia Blue Book 240–50 (1949).

Given the decentralized structure of the judiciary in 1949, independent investigation on the part of some officer was necessary to ascertain the adequacy of prior contributions to the judges' retirement fund under West Virginia Code § 51–9–4 (1949); the length of military and judicial service rendered under West Virginia Code § 51–9–6 (1949); and, the level of compensation received during the last year of judicial service under West Virginia Code § 51–9–6 (1949). Necessarily, this would have entailed inquiry of the auditor, the treasurer, and each county court in the judicial circuit in which a circuit judge served or the county court in the county in which a judge of a court of limited jurisdiction served. Due to the absence of a responsible administrative officer within the judicial branch to certify the fundamentals necessary for judges' retirement benefits, it was natural that the legislature chose the chief executive, especially in light of the chief executive's judicial appointment responsibilities, chairmanship of the board of public works, and supervision of the auditor and treasurer, to act as conduit between the judicial and executive branches of government in the investigation and determination of eligibility for the receipt of benefits in the judges' retirement system.

Unlike the other three state retirement systems, the administration of the judges' retirement system was not consolidated in a judges' retirement board. Many of the same officers, however, who have statutory duties in the judges' retirement system also serve as members of the boards of the other state retirement systems. The membership of the Public Employees' Retirement Board, charged with "[t]he administration and management of the retirement system, the responsibility for making effective the provisions of this article, and the authority to make all rules and regulations therefor," includes the auditor and

the treasurer. *See* West Virginia Code § 5–10–5 (1979 Replacement Vol.). The membership of the Department of Public Safety Retirement Board, granted the power to "make rules and regulations ... governing procedure and order and manner of business by and before such board [and] to make awards and to revise and terminate awards previously made ...," includes the attorney general and treasurer. *See* West Virginia Code § 15–2–26 (1985 Replacement Vol.). The membership of the Teachers' Retirement Board, directed to "make all necessary rules and regulations to carry out the provisions of this article," includes the governor and the treasurer. *See* West Virginia Code § 18–7A–4 and –5 (1984 Replacement Vol.).

In the judges' retirement system, the governor,[5] the auditor,[6] the secretary of state,[7] the treasurer,[8] the attorney gener-

5. *See* West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("The governor shall fix the amount of [the state treasurer's bond as custodian of the fund and any investment securities of the retirement system]"); West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("[T]he board of public works [of which the governor is a member] shall have authority to invest said [judges' retirement] fund in interest-bearing securities of the United States of America, of the State of West Virginia and of any political subdivision thereof."); West Virginia Code § 51–9–8 (1981 Replacement Vol.) ("Whenever a judge ... shall become physically or mentally incapacitated to perform the duties of his office as judge ... and shall make a written application to the governor ... the governor shall make such investigation as he shall deem advisable and, if he shall determine that such disability exists ... he shall thereupon accept the resignation and ... direct the retirement of the judge...."); West Virginia Code § 51–9–9 (1981 Replacement Vol.) ("[T]he governor shall make such investigation as he shall deem advisable and, if the governor shall determine that such person is entitled to benefits ..., the governor shall accept the resignation and certify said facts and the amount of retirement benefits to be paid....").

6. *See* West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("The state auditor shall be the fiscal officer responsible for the records and administration of the fund...."); West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("[T]he board of public works [of which the state auditor is a member] shall have authority to invest said fund...."); West Virginia Code § 51–9–4 (1981 Replacement Vol.) ("[T]he state auditor shall deduct from the amount of each ... salary check six percent thereof...."); West Virginia Code § 51–9–5 (1981 Replacement Vol.) ("[A]ny judge may in writing notify the auditor ... that he elects not to make payments or contributions to the fund.... If such notice in writing be given, any deductions theretofore made ... shall be refunded ... by the auditor...."); West Virginia Code § 51–9–8 (1981 Replacement Vol.) ("The secretary of state shall thereupon file a certified copy of [the gubernatorial order of disability] with the state auditor."); West Virginia Code § 51–9–9 (1981 Replacement Vol.) ("The secretary of state shall thereupon file a certified copy of [the gubernatorial order of retirement] with the State auditor."); West Virginia Code § 51–9–11 (1981 Replacement Vol.) ("The retirement benefits ... shall be paid in equal monthly installments upon the warrant of the state auditor drawn on the judges' retirement fund."); West Virginia Code § 51–9–12 (1981 Replacement Vol.) ("Any judge ... whose services have terminated, otherwise than by retirement ... shall, upon ... written demand ... filed with the state auditor, by a proper warrant of the state auditor drawn on the fund, be refunded ... any and all money paid...."); West Virginia Code § 51–9–12 (1981 Replacement Vol.) ("[S]hould a retired judge die ... before he has received from the judges' retirement fund an amount equal to ... sums paid by him into such fund, or should the widow ... die or remarry ... before she and her husband have received from the judges' retirement fund an amount equal to ... sums contributed by him ... the auditor shall ... refund ... an amount equal to the difference....").

7. *See* West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("[T]he board of public works [of which the secretary of state is a member] shall have authority to invest said fund...."); West Virginia Code § 51–9–8 (1981 Replacement Vol.) ("[T]he governor shall make such investigation as he shall deem advisable and, if he shall determine that such disability exists ... he shall thereupon accept the resignation and, by written order filed in the office of secretary of state, direct the retirement of the judge.... The secretary of state shall thereupon file a certified copy of said order with the state auditor."); West Virginia Code § 51–9–9 (1981 Replacement Vol.) ("[I]f the governor shall determine that such person is entitled to retirement benefits ... the governor shall accept the resignation and certify said facts and the amount of retirement benefits to be paid ... by a written order to be filed in the office of the secretary of state. The secretary of state shall thereupon file a certified copy of said order with the State auditor.").

8. *See* West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("The state treasurer shall be the custodian of the fund and of any investment

al,[9] the superintendent of schools,[10] and, the commissioner of agriculture [11] are charged by statute with certain responsibilities. Unlike the other three state retirement systems, however, their powers are not coordinated and consolidated into a single authority with power to promulgate formal rules and regulations governing the administration of the judges' retirement system. Granted this structural diffusion, as well as the skeletal nature of the statutory scheme, the systemic evolution of judges' retirement has been interstitial.[12]

In order to obtain an accurate picture of the actual operation of the judges' retirement system since its inception, the respondent was directed by the Court to supply all records relating thereto in his possession as custodian of the judges' retirement fund.[13] Examination of those records reveals certain patterns of behavior with respect to the actual administration of the judges' retirement system.[14] With the passage of time, these patterns became increasingly standardized procedures, including the development of form letters, form affidavits, and form orders. "[T]he traditional role of the executive to fill in the interstices left by flexible statutory standards," noted by this Court in *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622, 636 (1981), has been reflected in the maturation of the judges' retirement

securities of the retirement system...."); West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("[T]he board of public works [of which the state treasurer is a member] shall have authority to invest said fund...."); West Virginia Code § 51–9–4 (1981 Replacement Vol.) ("[T]he state auditor shall deduct from the amount of each ... salary check six percent thereof, which amount ... shall be credited by the state treasurer to said fund.").

9. *See* West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("The governor shall fix the amount of [the state treasurer's bond] which shall be approved as to sufficiency and form by the attorney general...."); West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("[T]he board of public works [of which the attorney general is a member] shall have authority to invest said fund....").

10. *See* West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("[T]he board of public works [of which the superintendent of schools is a member] shall have authority to invest said fund....").

11. *See* West Virginia Code § 51–9–3 (1981 Replacement Vol.) ("[T]he board of public works [of which the commissioner of agriculture is a member] shall have authority to invest said fund....").

12. The necessity of interstitial development and interpretation of skeletal statutory schemes by the executive branch has been noted by this Court on several occasions. With respect to both formal and informal procedures developed in connection with the administration of the public employees' retirement system, this Court stated in *In re Dostert*, 174 W.Va. at 276 n. 40, 324 S.E.2d at 420 n. 40, "This administrative overlay or patchwork approach has developed as a means of filling in the interstices between the statutory provisions of the respective retirement systems." Similarly, in *State ex rel. D.D.H.*

*v. Dostert*, 165 W.Va. 448, 460, 269 S.E.2d 401, 410 (1980), this Court, observing the interrelationship between procedure and policy, noted that, "As David Dudley Field, author of the *Field Code*, once pointed out, substantive law can be 'gradually secreted in the interstices of procedure.' "

13. The respondent's certification of these records reads:

I, Glen B. Gainer, Jr., Auditor of the State of West Virginia, being custodian of all records relating to Judicial Retirement, both judges and their widows, do hereby certify that the reproductions provided in response to the Gloria DePond vs Glen B. Gainer, Jr. case in the West Virginia Supreme Court of Appeals are true copies of the originals and are all records as they relate to my custody for my term of office which began January 16, 1977.

14. In addition to documentation relevant to the judges' retirement system, the files supplied by the respondent also contain a great deal of extraneous matter, including correspondence relating to judicial expense accounts, judicial salary, income tax withholding, social security tax withholding, secretarial employment, secretarial salary, stenographic employment, stenographic salary, and the judicial budget. Inclusion of this extraneous matter in the judges' retirement records retained by the respondent significantly complicated analysis of the procedure utilized for processing applications for benefits. Moreover, several records were supplied for judges who never received benefits in the judges' retirement system. Records for the Honorable Frank L. Taylor, Judge of the Thirteenth Judicial Circuit; the Honorable Max DeBerry, Judge of the Third Judicial Circuit; the Honorable Russell C. Dunbar, Judge of the Sixth Judicial Circuit; and, the Honorable J. Harper Meredith, Judge of the Sixteenth Judicial Circuit, although containing both retirement and nonretirement material, do not reflect the ultimate award of benefits under the judges' retirement system.

system. Analysis of the procedures utilized for obtaining benefits will reveal the interpretation given the judges' retirement statute by those charged with its administration.

According to records supplied by the respondent, a total of forty-nine judges have been awarded benefits in the judges' retirement system since its inception. Files were made available for all but the Honorable John Harold Brennan, Judge of the First Judicial Circuit,[15] who died on January 1, 1968. For the remaining forty-eight judges, the files contain both retirement and nonretirement material. One common denominator, however, to each of the files, is a gubernatorial order, pursuant to West Virginia Code § 51-9-9 (1981 Replacement Vol.), certifying entitlement to retirement benefits and the amount of retirement benefits to be paid.

Through 1968, the first nine judges to retire applied directly to the governor by affidavit, although the records reflect, at least for two of these judges, the involvement of the auditor who ascertained the amount of salary supplement provided by the county courts in the judicial circuits of the judges involved. Commencing with the retirement of the Honorable Stanley Bosworth, Judge of the Twentieth Judicial Circuit, whose order was signed on January 8, 1969, the auditor assumed an active role in the application process.

From 1969 through 1981, the auditor received proof of eligibility for judges' retirement benefits; transmitted such proof of eligibility to the chief executive with a form cover letter outlining the particulars required by statute; and, forwarded a form order prepared for the chief executive's signature. From the retirement of Judge Bosworth to the retirement of the Honorable James G. McClure, Judge of the First Judicial Circuit, whose order was signed on January 15, 1981, the auditor prepared the gubernatorial order for twenty-three of twenty-four judges who retired over that period. In an illustrative letter to the Honorable Gray Silver, Jr., Judge of the Twenty-Third Judicial Circuit, the state auditor explained, "I have gathered the data which will be required for the determination of your eligibility for participation in the system. I have prepared a draft of an order to be signed by the Governor...."

This relatively expeditious process did not reflect any exercise of discretion by either the chief executive or the auditor. The average time lapse between transmittal and signature was only 5.68 days. The longest period of time between transmittal and signature was twenty-seven days and a number of orders were signed on the day of transmission.[16] The evolution of the auditor as the chief actor in the judges' retirement system application process was a function of two factors—his statutory role as fiscal officer of the judges' retirement fund and the lack of an administrative officer in the judicial branch to serve as agent for collection, compilation, and certification of eligibility documentation for members of the judges' retirement system.

Over the years, different types of certification accompanied judicial applications for retirement benefits. The most common was a birth certificate, submitted to establish the requisite age of sixty-five for retirement under West Virginia Code §§ 51-9-6 and 6a (1981 Replacement Vol.) except for those judges who had at least twenty-four years of credited service. Documentation also included W-2 forms, to establish levels of compensation or length of governmental service; affidavits of circuit and county clerks, to establish levels of compensation, length of other governmental service, or length of judicial service; affidavits of the judges themselves, to establish various criteria of eligibility; and, vari-

---

**15.** The fact that Judge Brennan did receive benefits under the judges' retirement system is shown by the file supplied relating to the receipt of a spousal annuity by his widow. *See also State ex rel. Fahey v. Brennan,* 139 W.Va. 122, 79 S.E.2d 109 (1953) (retired judge who was not selected as special judge in accordance with relevant statute could not serve).

**16.** A few gubernatorial orders appear on their face to have been signed prior to their transmittal by the auditor. This is most likely a function of typographical error. Therefore, these orders were *not* included in determining the average time lapse between transmittal and signature.

ous other forms of documentation, including certificates of election, marriage certificates, court administrator affidavits, physicians' reports, certificates of military service, census reports, clerk of the supreme court of appeals affidavits, a voter's registration certificate, an auditor's affidavit, and, a court order. Survey of this documentation demonstrates that "proof of eligibility" in the judges' retirement system statute has been consistently interpreted to refer to only two categories of eligibility criteria—age and length of credited service.[17]

A form letter[18] was used by the auditor in connection with the transmission of a form order and accompanying documentation. Over the years, any variance from this basic form letter of transmission was slight. As "Fiscal Officer for Judges' Retirement Fund," the auditor acted as conduit between the judge applying for benefits and the chief executive. Although letters of resignation were invariably addressed to the chief executive, many times they were initially transmitted to the auditor. When a judge did transmit his letter of resignation and proof of eligibility directly to the chief executive, a form letter of receipt was often used which explained that the auditor would process the application for benefits.[19] Deviation from this form letter of receipt and referral was slight. On a few occasions, for example, the letter included the statement, "In accordance with your request, I hereby accept your resignation as Judge of the _____ Judicial Circuit of the State of West Virginia, effective _____ —, 19__." For the most part, however, this letter merely acknowledged receipt and informed the judge that the auditor would process the application and prepare an order. The proposed gubernatorial orders, prepared by the auditor, that certified judicial eligibility for the receipt of retirement benefits, also became quite formalized.[20]

From 1961, when the first widow began receiving an annuity in the judges' retirement system, until 1977, the procedure for obtaining a spousal annuity under the judges' retirement system was even more formalized than that for obtaining judges' benefits. According to the records, a total of twenty-six widows have been awarded an annuity in the judges' retirement system. Although nineteen of these widows were awarded annuities pursuant to gubernatorial order, seven of the last eight widows to receive annuities, covering a period of from 1982 through 1985, have done so without a gubernatorial order. This belies the respondent's assertion by brief that, "[N]o widow's benefit has ever been paid out of the judicial system without the ... order from the Governor," something the respondent characterizes as "the quintessential element of the Auditor's involvement in the matter of judicial retirement." It also indicates the respondent's lack of awareness of the operations of his own office or the judges' retirement system. In fact, the auditor's role in assisting widows in the judges' retirement system has been historically even more active than it has been with judges.

Unlike judicial application for retirement benefits, where the chief executive was occasionally the initial contact, the process for obtaining spousal annuities characteristically commenced with communication between the widow and the auditor. Such communication was generally initiated by the widow or her representative, either by letter or by telephone. Following this initial contact, the auditor would normally detail, in a letter sent to the widow or her representative, the procedure and necessary documentation for obtaining retirement benefits. For example, in a letter to several widows or their representatives, the auditor stated that, "It has been the practice of this office to procure the necessary information for the Governor in order that he may make the determination of

17. Contributions to the judges' retirement fund sufficient to credit service is certainly another eligibility criterion. Proof of this criterion is clearly within the knowledge of the auditor.

18. *See* Appendix I.

19. *See* Appendix II.

20. *See* Appendix III.

eligibility for benefits...." Similarly, in a number of other letters to widows or their representatives, the auditor noted that, "It has been the practice of this office to obtain the information necessary for the Governor in order that he may make the determination of eligibility for benefits...." Finally, in addition to other letters utilizing similar language, the auditor stated in a letter to the lawyer of Mrs. Kathryn A. Pryor that, "[T]his office will forward same to the office of the Governor with a cover letter requesting the Governor to determine ... the eligibility for benefits...."

The types of certification that accompanied the applications of widows for annuities in the judges' retirement system were not as numerous as those that accompanied judicial applications for benefits. The most common form of documentation was a certificate of death, appearing in twenty-four of the twenty-six files. A certificate of marriage was the next most frequently attached form of documentation, appearing in twenty-two of the twenty-six files. Additionally, a form widow's affidavit appeared in eighteen of the twenty-six files. Finally, the widows' files also contained six certificates from county clerks and three certificates from life insurance companies. Survey of this documentation demonstrates that "proof of eligibility" for widows in the judges' retirement system has consistently been interpreted to refer to only three categories of eligibility criteria—death, marriage, and cohabitation.[21] As enumerated in several of the letters sent from the auditor to widows or their representatives:

> [W]e respectfully request the following information:
>
> (1) Copy of the Marriage Certificate.
>
> (2) Copy of the Death Certificate.
>
> (3) Affidavit by petitioner setting forth the date of marriage, date of the death of husband, that said husband and wife were living together as man and wife

until the date of death, and that widow has not remarried.[22]

As with the retirement of judges, form letters of transmittal and form orders were used by the auditor in the processing of requests for annuities by widows in the judges' retirement system. In the file of Mrs. Mabel Price Snyder, handwritten notations appearing upon a copy of a letter previously sent on behalf of Mrs. Ruby Mae Winters reflect the utilization of a form letter of transmittal.[23] Similarly, as with judicial applicants for retirement benefits, a form order was utilized for gubernatorial approval of spousal annuities.[24]

As with the more formalized procedure that prevailed for judicial applications from 1969 through 1980, this process, again reflecting absolutely no exercise of discretion by either the chief executive or the auditor, was completed with relative alacrity. The average time lapse between transmittal of the auditor's draft order and gubernatorial signature of that order was a mere 7.60 days, with the longest lapse at 20 days and the shortest lapse on the same day as transmittal. Further, the average lapse of time between the death of the judge and gubernatorial signature of the proposed order was 26.41 days, with the longest lapse at 53 days and the shortest lapse at 4 days.

Commencing with the retirement of the Honorable W.H. Belcher, Judge of the Thirteenth Judicial Circuit, whose order was signed by the chief executive on July 23, 1981, and with the award of an annuity to Mrs. Doris Jarrett, widow of the Honorable Howard M. Jarrett, Judge of the Ninth Judicial Circuit, who died on October 20, 1981, the auditor's participation in processing benefits in the judges' retirement system declined. For example, while records reflect that all judges who received benefits after Judge Belcher did so pursuant to a gubernatorial order, it appears that none of these draft orders were, as in the past, presented by the auditor. In fact, one of

---

21. We find no statutory basis for this final requirement.

22. A copy of a form widow's affidavit sent to a number of widows contained in the file of Mrs. Kathryn Ann Pryor is attached as Appendix IV.

23. The basic format of letters of transmittal for widows can be found in Appendix V.

24. *See* Appendix VI.

the orders, for the Honorable Arthur R. Kingdon, Judge of the Twenty-Seventh Judicial Circuit, was presented by the administrative director of the supreme court of appeals. Moreover, one of the reasons that seven of the last eight widows to receive an annuity did not receive a gubernatorial order was undoubtedly that the auditor failed to present proposed orders to the chief executive.

Although the auditor continued in some instances to receive documentation in support of applications for judicial retirement benefits, several of the files of judges who retired after 1981 contain no correspondence between the judge and the auditor regarding such applications. For example, the Honorable Kenneth K. Hall, Judge of the Twenty-Fifth Judicial Circuit, applied directly to the chief executive by letter dated January 4, 1983, and was awarded benefits by gubernatorial order on February 24, 1983; the Honorable Donald F. Black, Judge of the Fourth Judicial Circuit, applied directly to the chief executive by letter dated November 19, 1984, and was awarded benefits by gubernatorial order on January 1, 1985; the Honorable H. Harvey Oakley, Judge of the Seventh Judicial Circuit, applied directly to the chief executive by letter dated August 1, 1985, subsequently supported by the administrative director of the supreme court of appeals' certification of proof of his eligibility, and was awarded benefits by gubernatorial order on October 9, 1985; and, the Honorable C.W. Ferguson III, Judge of the Twenty-Fourth Judicial Circuit, applied directly to the chief executive by letter dated September 17, 1985, subsequently supported by the administrative director of the supreme court of appeals' certification of proof of his eligibility, and was awarded benefits by gubernatorial order on October 9, 1985.

For widows, documentation was still consistently transmitted directly to the auditor, but no effort was apparently made by the auditor to secure a gubernatorial order prior to payment of the benefits sought. Presumably, the auditor commenced payment immediately upon receipt of proof of death and marriage. It is important to note that in at least one case, Mrs. Eliza-beth Meredith, widow of the Honorable J. Harper Meredith, Judge of the Sixteenth Judicial Circuit, there existed no prior gubernatorial order awarding retirement benefits to the deceased judge. Therefore, it does not appear that the auditor was relying upon a previous gubernatorial order for the husband to support his failure to secure a gubernatorial order for the widow prior to payment.

Eventually, the auditor not only became more apathetic with respect to processing judges' retirement system benefits, he became increasingly antagonistic. For example, in response to a request from the chief executive's office on January 31, 1984 to work "together to determine what rights [the Honorable Vance E. Sencindiver, Judge of the Thirty-First Judicial Circuit] has under ... the Judicial Retirement Fund ... and what additional steps he may have to take in order to receive benefits from the Judicial Retirement Fund ...," the respondent's office tersely replied, "At such time as Judge Vance Sencindiver files with the Governor's office his intent to retire ... this office will begin the process to include Judge Sencindiver in the judicial retirement benefits program." Never before, in the history of the judges' retirement system, had the auditor demanded evidence of gubernatorial receipt of resignation before processing an application for judges' retirement benefits. In fact, the auditor had previously facilitated judicial retirement far in advance of impending formal resignation.

Furthermore, in the case of widows, the respondent also began supplanting himself in what he now claims to be the chief executive's role. As previously mentioned, beginning in 1982, the respondent failed to secure gubernatorial orders prior to the payment of spousal annuities. In a letter to Mrs. Doris Jarrett, the first widow to receive benefits in the absence of a gubernatorial order, the respondent explained that, "In order to ... *justify* the fact that Mrs. Doris Jarrett *is receiving* income from the Judges Retirement Fund, we are *suggesting that* the following documents be furnished to this office: A certified copy

of the death certificate of Judge Howard M. Jarrett. A certified copy of the marriage license certificate of Howard M. Jarrett and Doris F. Jarrett." (Emphasis added).

Ultimately, the respondent's antagonistic reluctance to process requests for judges' retirement system benefits as his office had done in the past matured into recalcitrance and refusal. In a letter to the Honorable Arthur R. Kingdon, whose order was signed by the chief executive on January 10, 1985, the respondent stated on February 1, 1985, that, "I ... decline to process your application for retirement benefits...." This refusal culminated with our decision in *Oakley v. Gainer*, 175 W.Va. at 122, 331 S.E.2d at 853, where this Court held that:

> In the present case, the Administrative Director certified Judge Kingdon's military, governmental, and judicial service to the proper administrators; calculated the level of contribution necessary to obtain the credit desired and to transfer such credit into the judicial retirement system; and forwarded this information, together with the necessary contribution, to respondent Gainer. Further, after appropriate consideration and investigation, the Governor certified Judge Kingdon's eligibility for retirement benefits under the judicial retirement system to the Secretary of State. At that point, it became respondent Gainer's duty, under West Virginia Code § 51-9-11 (1981 Replacement Vol.), to issue the appropriate warrants on the judicial retirement fund for payment of Judge Kingdon's retirement benefits.

Following our decision in *Oakley v. Gainer*, however, the respondent continued to evidence a fundamental misunderstanding of his role with respect to the judges' retirement system. In a letter to Mrs. Elsa Kingdon, widow of Judge Kingdon and a successor petitioner in *Oakley v. Gainer*, the respondent stated, on June 10, 1985, that, "[A]lthough I do not believe that this matter has been finally adjudicated I do believe that it would be unfair of me to continue *not allowing Judge Kingdon to retire* so that you may begin receiving benefits." (Emphasis added) (Judge King-

don died several months prior to this letter). Again, with respect to widows, the respondent was asserting that he acted as final arbiter of judicial retirement and not the chief executive. This clearly departs from prior administrative practice and the plain language of West Virginia Code § 51-9-9 (1981 Replacement Vol.). Finally, after the respondent continued in his steadfast refusal to perform his statutory duties with respect to the deposit of contributions received from judges for creditable service in the judges' retirement system, this Court was required under law to the respondent, in an action brought by three widows currently receiving benefits in the judges' retirement system, to place into the spousal annuity fund all present and future contributions made under West Virginia Code § 51-9-4 (1981 Replacement Vol.) and this Court's opinion in *In re Dostert. See Pryor v. Gainer*, No. 16745, slip op. at 1 (W.Va. July 2, 1985) (per curiam).

As previously noted, the assumption of the role by the auditor as chief actor in the judges' retirement system application process was a function of his statutory role as fiscal officer of the judges' retirement fund and the lack of an administrative officer in the judicial system to serve as agent for collection, compilation, and certification of eligibility for members of the judges' retirement system. As the auditor assumed a more apathetic and, finally, antagonistic posture, and as the office of the administrative director of the supreme court of appeals grew in expertise, efficiency, and logistical support, many of the responsibilities with respect to "service" eligibility, as opposed to "financial" eligibility, which were previously performed by the auditor, were not being exercised by the court administrator.

Systemically, there was nothing in the judges' retirement statute that formed the basis for assumption of responsibilities with regard to "service" eligibility by the auditor. Certainly, reference to the auditor by the chief executive was necessary to determine "financial" eligibility, *i.e.*, whether all contributions required by law had been made. The auditor was also bet-

ter equipped to assist in the determination of a judge's level of current compensation, which varied widely from circuit to circuit and from court to court prior to the Judicial Reorganization Amendment of 1974, necessary for calculation of the amount of retirement benefits to be paid. On the other hand, gubernatorial reference was also made to the auditor, in the absence of another officer equipped to perform such function, in order to determine "service" eligibility, *i.e.*, whether the age and/or years of creditable service were sufficient for entitlement to judicial retirement system benefits.

Not only did the creation and maturation of the office of the administrative director of the supreme court of appeals diminish the necessity for performance of these duties by the auditor, simplification of the judicial system itself, of which creation of the office of the administrative director was a part, including consolidation of courts of general and limited jurisdiction into a unified system of circuit courts with a standardized compensation scheme, vitiated executive department assumption of determination of "service" eligibility. Furthermore, as evidenced by the failure of the respondent to present gubernatorial orders prior to payment of widows' annuities since 1982, performance of both "financial" and "service" functions by one officer tended to create a conflict which resulted in unnecessary delay. Therefore, the chief executive increasingly relied upon the court administrator in investigation of retirement eligibility.

Perhaps unavoidably, the absence of consolidation of authority and responsibility into a single judges' retirement system board created uncertainty and inefficiency. Until 1981, however, the practical effect of this structural defect was minimized by the pragmatic application of standardized procedures for securing judges' retirement system benefits. In particular, the utilization of form affidavits, form letters, and form orders, prepared by the auditor, integral parts of a rather comprehensive standard operating procedure, increased certainty and efficiency to a degree that approximated the promulgation of formal rules and regulations.

This Court has consistently held that, "Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syl. pt. 4, *Security National Bank & Trust Co. v. First W. Va. Bancorp., Inc.,* 166 W.Va. 775, 277 S.E.2d 613 (1981); *see also* Syl. pt. 5, *Hodge v. Ginsberg,* 172 W.Va. 17, 303 S.E.2d 245 (1983); Syl. pt. 1, *Dillon v. Board of Education,* 171 W.Va. 631, 301 S.E.2d 588 (1983); *Thomas v. Board of Education,* 164 W.Va. 84, 91–92, 261 S.E.2d 66, 71 (1979); Syl. pt. 8, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975); Syl. pt. 7, *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975); *State ex rel. Davis v. Hix,* 141 W.Va. 385, 389, 90 S.E.2d 357, 359–60 (1955); *State ex rel. Thompson v. Morton,* 140 W.Va. 207, 222, 84 S.E.2d 791, 800 (1954); *In re Newberry's Estate,* 138 W.Va. 296, 302, 75 S.E.2d 851, 854 (1953); *State ex rel. Daily Gazette Co. v. County Court,* 137 W.Va. 127, 132, 70 S.E.2d 260, 262 (1952); *Wilson v. Hix,* 136 W.Va. 59, 68, 65 S.E.2d 717, 723–24 (1951); Syl. pt. 4, *Ballard v. Vest,* 136 W.Va. 80, 65 S.E.2d 649 (1951); *Wheeling Fire Ins. Co. v. Board of Equalization and Review,* 111 W.Va. 161, 169, 161 S.E. 427, 430 (1931); Syl. pt. 2, *State ex rel. Brandon v. Board of Control,* 84 W.Va. 417, 100 S.E. 215 (1919); Syl. pt. 4, *Thomas v. State Board of Health,* 72 W.Va. 776, 79 S.E. 725 (1913); Syl. pt. 4, *State v. Davis,* 62 W.Va. 500, 60 S.E. 584 (1907); Syl. pt. 6, *Daniel v. Simms,* 49 W.Va. 554, 39 S.E. 690 (1901). Relatedly, this Court has held that, "An administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs." Syl. pt. 1, *Powell v. Brown,* 160 W.Va. 723, 238 S.E.2d 220 (1977); *see also* Syl. Pt. 1, *Hooper v. Jensen,* 174 W.Va. 643, 328 S.E.2d 519 (1985); Syl., *Swallop v. Civil Service Commission,* 172 W.Va. 121, 304 S.E.2d 25 (1983); *C & P Telephone Co. v. Public Service Commission,* 171 W.Va. 708, 301 S.E.2d 798, 804 (1983); Syl. pt. 2, *Clarke v. West Virginia Board of Regents,* 171 W.Va. 662, 301 S.E.2d 618 (1983); Syl. pt. 1,

*State ex rel. Wilson v. Truby,* 167 W.Va. 179, 281 S.E.2d 231 (1981); Syl. pt. 1, *Trimboli v. Board of Education,* 163 W.Va. 1, 254 S.E.2d 561 (1979); *McGrady v. Callaghan,* 161 W.Va. 180, 187–88, 244 S.E.2d 793, 797 (1978).

The individual roles assumed by the various officers who independently participate in the administration of the judges' retirement system have been self-delineated. Although this interstitial evolution has taken place with reference to the judges' retirement system statute, much of the development of recent vintage is attributable to structural changes in the judicial department, particularly the creation of the office of the administrative director of the supreme court of appeals. Moreover, the recession into a more apathetic role by the respondent created a void that the court administrator was lawfully equipped to fill. Although complete structural consolidation of authority and responsibility under the judges' retirement system into a single board is not extant, an integrated process can be articulated from the standard operating procedures that will approximate the advantages of structural consolidation by coordinating the functions of the various officers who participate in the administration of the judges' retirement system in order to promote and preserve stability, predictability, and efficiency.

"[T]he Administrative Director of the Supreme Court of Appeals," as we noted in *In re Dostert,* 174 W.Va. at 278, 324 S.E.2d at 422, "is the constitutional judicial officer charged by this Court with the maintenance, administration, and certification of judicial salary and retirement records." Granted this responsibility, we held in *In re Dostert,* 174 W.Va. at 278, 324 S.E.2d at 422, that, "It is his duty to certify all service credit for judges of courts of record to proper administrators, specifically including those responsible for the administration of the respective retirement systems in which judges may participate." In order to effectuate this duty, we held in *In re Dostert,* 174 W.Va. at 278, 324 S.E.2d at 422, that, "It is his duty to assist judges of

courts of record in calculating the level of contribution necessary to obtain the credit desired from the respective retirement systems." Certificates of proof of creditable service presented by the court administrator have been relied upon by the governor in certification of the retirement of the Honorable Arthur R. Kingdon, the Honorable Vance E. Sencindiver, the Honorable C.W. Ferguson III, and the Honorable H. Harvey Oakley. Calculations of level of contribution necessary to transform such creditable service into credited service prepared by the court administrator were validated in *Oakley v. Gainer,* 175 W.Va. at 120–24, 331 S.E.2d at 851–55.

Although both stability and efficiency are promoted and preserved by this procedure, it fails to satisfy fundamental concerns of predictability. For example, despite certification of sufficient creditable service prepared by the court administrator, and subsequent execution of a gubernatorial order, the respondent refused to execute the warrants necessary for payment of benefits to the Honorable Arthur R. Kingdon and then to his widow Mrs. Elsa Kingdon. *See Oakley v. Gainer,* 175 W.Va. at 120–24, 331 S.E.2d at 851–55. Furthermore, granted the requirement, under West Virginia Code § 3-5-7 (Supp. 1985), that certificates of candidacy "shall be filed … not later than the first Saturday of February next preceding the primary election day …," judges who are weighing possible retirement against possible candidacy for reelection need absolute certainty with respect to their eligibility for judicial retirement system benefits. Otherwise, a judge could forego an effort at reelection in reliance upon representations of sufficient creditable service by the court administrator only to have his or her subsequent attempt to secure retirement benefits rebuffed by the chief executive or the auditor. Therefore, we hold that the administrative director of the supreme court of appeals has a duty to progressively certify creditable service for all members of the judges' retirement system to the auditor on at least an annual basis.[25]

25. Of course, for a judge to obtain certification of proof of creditable service by the administrative director of the supreme court of appeals, proof of actual military and governmental service must be submitted under his rules.

West Virginia Code § 51-9-3 (1981 Replacement Vol.) provides, in relevant part, that, "The state auditor shall be the fiscal officer responsible for the records and administration of the [judges' retirement] fund.. . . ." With respect to deductions for required contributions to the judges' retirement fund, West Virginia Code § 51-9-4 (1981 Replacement Vol.) provides that, "In drawing warrants for the salary checks of said judges, the state auditor shall deduct from the amount of each salary check six percent thereof. . . ." With respect to the actual payment of benefits, West Virginia Code § 51-9-11 (1981 Replacement Vol.) provides that, "The retirement benefits and retirement pay, as herein provided, shall be paid in equal monthly installments upon the warrant of the state auditor drawn on the judges' retirement fund." Obviously, all of the auditor's duties under the judges' retirement statute are directly a function of his role as "fiscal officer" of the judges' retirement fund. It is apparent that the auditor has, by his own actions in this role, defined the procedure which has been followed over the years.

█ The respondent aptly describes himself as "bookkeeper" of the judges' retirement fund. His certification is necessary to establish that contributions are commensurate with the amount of creditable service certified by the administrative director of the supreme court of appeals. It is this certification by the auditor that transforms "creditable service" into "credited service." In order to avoid unnecessary uncertainty inherent in the postponement of the auditor's certification of contributions corresponding to the amount of creditable service claimed, we hold that the auditor, upon annual receipt of certification of creditable service for members of the judges' retirement system from the administrative director of the supreme court of appeals, has

a duty to acknowledge that contributions corresponding to the amount of creditable service certified have been made and to forward, to each member of the judges' retirement system, a letter certifying credited service.

█ Eventually, under West Virginia Code § 51-9-4 (1981 Replacement Vol.), which provides that "when a judge becomes eligible to receive benefits ...," the auditor has a duty to forward to the judge the original and one certified copy of a letter of certification of eligibility for benefits in the judges' retirement system. The original letter of certification of eligibility for benefits in the judges' retirement system may be retained for the personal records of each judge and the certified copy should accompany the judge's letter of conditional resignation and request for benefits in the judges' retirement system to the chief executive. Additionally, the auditor must forward a certified copy of the letter of certification of eligibility for benefits in the judges' retirement system to the administrative director of the supreme court of appeals and must retain two certified copies, one for the judge's permanent file and one to be attached to the proposed gubernatorial order to be transmitted upon the judge's retirement. Files reveal that a significant number of retired judges received a form letter from the auditor which informed them of their immediate eligibility for benefits.[26] We suggest that designation of this letter as a certification of eligibility for benefits in the judges' retirement system would be commensurate with its actual function.[27]

█ Once a member of the judges' retirement system has received a "certification of eligibility for benefits in the judges' retirement system," the process for securing benefits becomes quite simple. Following receipt of a "certification of eligibility

---

**26.** In many cases, failure of the auditor to discover the onset of eligibility of a judge to receive benefits in the judges' retirement system resulted in continued deduction of six percent of salary. Eventually, when this oversight was discovered, sometimes significant refunds of excess contributions had to be made. Annual issuance of a letter by the auditor certifying credited service and more efficient recordkeeping that segregates retirement materials from nonretirement materials will serve to prevent this type of unnecessary deduction in the future.

**27.** A suggested format for this "certificate of eligibility for benefits in the judges' retirement system' is found in Appendix VII.

for benefits in the judges' retirement system" from the auditor, a member of the judges' retirement system may notify the governor, by letter and certified copy of the "certification of eligibility for benefits in the judges' retirement system," of an intention to retire, and, concomitantly with a copy of the letter to the governor, request the auditor to prepare and forward to the governor forthwith a proposed gubernatorial order and a certified copy of the "certification of eligibility for benefits in the judges' retirement system." [28]

Historically, the records reveal no exercise of gubernatorial discretion with respect to the acceptance of judicial resignation and the award of judicial retirement. As previously discussed, this understanding is consistent both with the language of the statute and with separation of powers considerations.

The ministerial duty of the chief executive to certify to the constitutional office of "retired justice or judge" under West Virginia Constitution art. VIII, § 8 upon eligibility for retirement is analogous to the ministerial duty of the chief executive to certify the constitutional office of active justice or judge under West Virginia Constitution art. VIII §§ 2 and 5 upon election. No one would seriously assert gubernatorial discretion with respect to the certification of eligibility of a qualified judge elected to assume judicial office. Likewise, no one should, in good faith, assert gubernatorial discretion with respect to the certification of eligibility of a judge properly qualified for the constitutional office of "retired justice or judge," [29] with entitlement to corresponding benefits in the judges' retirement system.

As noted earlier, the average time lapse between transmittal of the auditor's proposed order and gubernatorial signature

has been 5.68 days. The longest time lapse between transmittal and signature has been 27 days. Noting our observation in *State ex rel. Brotherton v. Moore*, 159 W.Va. 934, 941, 230 S.E.2d 638, 642 (1976), that gubernatorial performance of ministerial duties may be enforced by way of mandamus "after passage of an unreasonable period of time," a total time period of one month between submission of the letter of conditional resignation and proof of eligibility and execution of the gubernatorial order prepared by the auditor would seem reasonable. By their own actions and established operating procedures, the chief executives have themselves defined a reasonable time as less than one month.[30] We accept the chief executives' definition.

Granted the role of the administrative director of the supreme court of appeals with respect to the maintenance, administration, and certification of judges' retirement records, promotion and preservation of stability, predictability, and efficiency mandate that the administrative director serve as recipient and repository of proof of eligibility for spousal annuities. Following submission by a spouse to the administrative director of the supreme court of appeals of evidence of death, evidence of marriage, and a gubernatorial order for those judges who were already receiving benefits in the judges' retirement system or a "certificate of eligibility for benefits in the judges' retirement system" for those judges who were eligible to receive benefits in the judges' retirement system, the administrative director has a duty to forward a letter of certification of eligibility for spousal annuity in the judges' retirement system to the auditor, who, upon receipt, has a duty to present a proposed gubernatorial order forthwith.[31] Again, there has historically been no exercise of gubernatorial discretion with re-

---

**28.** A suggested format for the proposed gubernatorial order for judges is found in Appendix VIII.

**29.** *See* West Virginia Constitution art. VIII, § 8.

**30.** In this regard, and with respect to the standard operating procedures that have developed in the administration of the judges' retirement

system, the chief executive who most influenced this development served this State in that capacity from 1969 through 1977, and is currently serving the State in that capacity.

**31.** A suggested format for the proposed gubernatorial order for surviving spouse is found in Appendix IX.

spect to the approval of spousal benefits under the judges' retirement system. This is consistent with the language of the statute and with the law of ministerial duty.

■ As noted earlier, the average time lapse between transmittal of the auditor's prepared spousal order and gubernatorial signature has been 7.60 days. The longest time lapse between transmittal and signature has been 20 days. This is consistent with West Virginia Code § 51–9–6b (1981 Replacement Vol.), which provides that, with respect to spousal benefits, "The annuity granted hereunder shall accrue monthly and shall be due and payable in monthly installments on the first business day of the month following the month for which the annuity shall have accrued. Such annuity shall commence on the first day of the month in which said judge dies. . . ." As noted earlier, the average time lapse between the death of a judge and gubernatorial signature of the spousal order has been 26.41 days. Ideally, the gubernatorial order should be executed prior to the annuity becoming due and payable on the first business day of the month following the month of the judge's death. Obviously, however, if a judge dies on the last day of the month, preparation and execution of the gubernatorial order would be difficult, if not impossible, by the first business day of the next month. Therefore, as with the execution of gubernatorial orders for judges' retirement benefits, a total time period of one month between submission of the letter of request and supporting documentation and execution of the gubernatorial order prepared by the auditor would be reasonable. Perhaps more than for judges, time is often of the essence for the spouse of deceased judges. For example, in a letter to the auditor from a lawyer representing a widow whose husband had died following a long illness, he states, "I would personally appreciate it if you would expedite this application so that [she] will start receiving her checks. [The] Judge['s] illness was very expensive and this is a very trying time for [her] from a financial standpoint." The legislature obviously recognized this need for alacrity in its mandate

that payments commence on the first business day of the month following death.

■ As previously noted, the petitioner's eligibility to receive an annuity under the judges' retirement system is contingent upon her late husband's eligibility to receive benefits at the time of his death. See West Virginia Code § 51–9–6b (1981 Replacement Vol.). A member of the judges' retirement system with twenty-four years of credited service is immediately eligible for retirement benefits. See West Virginia Code § 51–9–6 (1981 Replacement Vol.). Creditable service in the judges' retirement system includes military, other governmental, and judicial service. See West Virginia Code § 51–9–6 (1981 Replacement Vol.). Military service, or its equivalent, rendered during a period of compulsory military service, "shall be considered as served" under West Virginia Code § 51–9–6 (1981 Replacement Vol.) for the purpose of determining eligibility for disability and retirement benefits in the judges' retirement system. See Oakley v. Gainer, 175 W.Va. at 121, 331 S.E.2d at 852; In re Dostert, 174 W.Va. at 273, 324 S.E.2d at 417. Service to this State or any of its political subdivisions "shall qualify as years of service" under West Virginia Code § 51–9–6 (1981 Replacement Vol.) for the purpose of determining eligibility for disability and retirement benefits in the judges' retirement system. See Oakley v. Gainer, 175 W.Va. at 121, 331 S.E.2d at 852; In re Dostert, 174 W.Va. at 274, 324 S.E.2d at 418. Finally, governmental service in this State in the judges' retirement system includes full or part-time service, whether by employment, election, or appointment, to the State of West Virginia or any of its political subdivisions. See Oakley v. Gainer, 175 W.Va. at 121, 331 S.E.2d at 852; In re Dostert, 174 W.Va. at 274 n. 33, 324 S.E.2d at 418 n. 33. Clearly, under these criteria, Judge DePond accumulated twenty-eight years of creditable service under West Virginia Code § 51–9–6 (1981 Replacement Vol.) for which he made corresponding contribution. Consequently, his twenty-eight years of credited service exceeded the twenty-four year requirement for immediate eligibility for retirement ben-

efits at the time of his death by four years. Thus, the petitioner was entitled to a spousal annuity under West Virginia Code § 51–9–6b (1981 Replacement Vol.) of the judges' retirement system statute commencing on September 1, 1985.

As noted by this Court in Syllabus Point 1 of *Wagoner v. Gainer, supra,* "The West Virginia Retirement System for Judges creates contractually vested property rights for retired and active participating plan members, and these rights are enforceable and cannot be impaired or diminished by the State." *See also Olson v. Cory,* 27 Cal.3d 532, 538–42, 636 P.2d 532, 536–38, 178 Cal.Rptr. 568, 572–74 (1980); *Campbell v. Michigan Judges Retirement Board,* 378 Mich. 169, 180–81, 143 N.W.2d 755, 757 (1966); *Sylvester v. State,* 298 Minn. 142, 154–55, 214 N.W.2d 658, 666 (1973); *McKenna v. State Employees' Retirement Board,* 495 Pa. 324, 331–35, 433 A.2d 871, 875–76 (1981); *Miles v. Tennessee Consolidated Retirement System,* 548 S.W.2d 299, 304 (Tenn.1976). The terms of the retirement contract between members of the judiciary who participate in the judges' retirement system and the State of West Virginia are embodied in the provisions of the judges' retirement system statute. When an officer of the State fails to perform ministerial duties in contravention of the statute, a breach of that retirement contract occurs, and a mandamus action may be brought to secure, in effect, specific performance. *See, e.g., Krucker v. Goddard,* 99 Ariz. 227, 232, 408 P.2d 20, 23 (1965) (judge awarded writ of mandamus compelling governor to transfer to treasurer an application for withdrawal of percentage of contributions to judicial retirement system); *Gorman v. Cranston,* 64 Cal.2d 441, 446–47, 413 P.2d 133, 137–38, 50 Cal. Rptr. 533, 537–38 (1966) (widow of judge awarded writ of mandate compelling state controller to approve her application for benefits under judicial retirement system).

The respondent's effort to shift the focus of this litigation is, in effect, an assertion that an adequate alternative reme-dy exists which precludes the availability of mandamus. As this Court, however, has frequently held, "Mandamus will not be denied on the ground that there is another remedy unless such other remedy is equally convenient, beneficial, and effective." Syl. pt. 5, *Hardin v. Foglesong,* 117 W.Va. 544, 186 S.E. 308 (1936); *see also West Virginia Citizens Action Group v. Daley,* 174 W.Va. 299, 324 S.E.2d 713, 716 (1984); *Allen v. Human Rights Commission,* 174 W.Va. 139, 324 S.E.2d 99, 106 n. 5 (1984), and numerous cases cited therein. Unquestionably, mandamus will lie to compel gubernatorial performance of a ministerial duty. *See, e.g., State ex rel. Brotherton v. Moore,* 159 W.Va. 934, 230 S.E.2d 638 (1976); *State ex rel. Kelly v. Moore,* 156 W.Va. 780, 197 S.E.2d 106 (1973). Obviously, this would include gubernatorial performance of ministerial duties under the judges' retirement statute. *See, e.g., Krucker v. Goddard, supra.* In the instant proceeding, however, the petitioner does not seek gubernatorial certification of her eligibility to receive an annuity under the judges' retirement system, but rather seeks issuance of warrants necessary for the payment of those benefits from the auditor.[32] Having previously noted the contractual nature of judicial retirement, we further observe this Court's recognition in *State ex rel. C & D Equipment Co. v. Gainer,* 154 W.Va. 83, 90, 174 S.E.2d 729, 733 (1970), of the auditor's amenability to compulsion, by way of mandamus, to issue warrants for the payment of completed contracts. Certainly, after submission of proof of eligibility, an individual, whether as judge or spouse, seeking benefits in the judges' retirement system, has completed the obligations under the contract, and is entitled to specific performance of the remainder of the State's obligations, the payment of benefits.

In *Gorman v. Cranston,* 64 Cal.2d at 443, 413 P.2d at 135, 50 Cal.Rptr. at 535, the Governor of the State of California had

---

**32.** In her original mandamus petition against the chief executive and the auditor, Mrs. DePond sought gubernatorial certification of her eligibility to receive an annuity under the judges' retirement system pursuant to her prior request of the governor for such certification. She subsequently amended her petition, however, to name the auditor as the sole respondent.

withheld the requisite approval of judges' retirement benefits to the widow of a judge who had executed conditional consent to his retirement in anticipation of serious surgery and who eventually died shortly thereafter. Mandamus was sought, however, not against the governor, whose approval was statutorily mandated prior to the payment of judges' retirement benefits, but rather against the state controller, who refused to act upon her application for benefits because of the absence of gubernatorial approval. 64 Cal.2d at 442, 413 P.2d at 134, 50 Cal.Rptr. at 534. In its award of relief, the California Supreme Court did not order the governor to certify the widow's eligibility to receive judges' retirement benefits, but ordered the state controller to pay her benefits. 64 Cal.2d at 447, 413 P.2d at 137–38, 50 Cal.Rptr. at 537–38.

 Therefore, upon gubernatorial failure to certify eligibility for the receipt of judges' retirement system benefits, mandamus will lie against the auditor to ascertain eligibility and to order the issuance of warrants necessary for the payment of those benefits. Furthermore, noting the observation in *State ex rel. Brotherton v. Moore*, 159 W.Va. at 941, 230 S.E.2d at 642, that gubernatorial performance of ministerial duties may be enforced by way of mandamus "after the passage of an unreasonable period of time," we hold that where, following submission of a request for benefits and proof of eligibility, the governor fails to certify eligibility for the receipt of judges' retirement system benefits within one month, the auditor has a mandatory ministerial duty to order the issuance of warrants necessary for the payment of those benefits.

It is of no consequence to those seeking benefits under the judges' retirement system whether a gubernatorial order has issued. Issuance of a gubernatorial order is for the benefit of the executive branch as a matter of proper recordkeeping and commencement of the process of replacement for judges who are retiring in term. The absence of a gubernatorial order cannot be relied upon to deny judges' retirement system benefits to eligible recipients. To hold otherwise would be to place form over substance and to frustrate the legislative purpose in creating a judges' retirement system in the first place.

If the auditor deems a gubernatorial order essential to the records of the judges' retirement fund, he may bring a mandamus proceeding against the chief executive for that purpose. Certainly, proper recordkeeping is a legitimate concern of the auditor as fiscal officer of the judges' retirement fund. By calling upon the attorney general for provision of legal representation in furtherance of such action, the incurrence of legal fees by the auditor may be avoided. Moreover, prosecution of such action by the auditor, instead of by the individual beneficiary in the judges' retirement system, will avoid the award of attorney fees, payable from the state treasury, to a private party.[33] It is hardly a persuasive defense by a state officer charged with performing ministerial duties that failure to perform is excused by another state officer's failure to perform other related ministerial duties.

 Until the respondent had forwarded proper certification of eligibility to the petitioner, the application process was at an impasse. Unquestionably, the auditor, as "fiscal officer" of the judges' retirement fund, acts as trustee, and owes a fiduciary duty to assist potential beneficiaries of the judges' retirement system in their efforts to secure benefits to which they are entitled by law. Historically, the auditor, as trustee, performed this duty admirably, particularly in the preparation of the gubernatorial order for signature. Recently, however, the respondent trustee's allegiance has been to something other than his duty to attend to the rights of potential beneficiaries, under law, to the payment of their benefits in the judges' retirement system. Thus, a return to standard operating procedures to promote and preserve the fundamental considerations of stability, predictability, and efficiency is in order.

---

**33.** Recalcitrance in the performance of ministerial duties can result in personal liability. *See*

63A Am.Jur.2d *Public Officers and Employees* § 363 (1984).

While we do not favor form over substance, we believe that proper documentation should be presented to the chief executive in order that he may properly discharge his lawful ministerial duties under West Virginia Constitution art. VII, § 5. Therefore, in moulding relief, we observe the technical requirements of the statute.

The administrative director of the supreme court of appeals fulfilled his duty by certification of creditable service for Judge DePond to the respondent. The record indicates that Judge DePond made the required contribution which was deposited to his account. It was the respondent trustee's duty to then forward to Judge DePond, and later to his widow, certification of eligibility for benefits in the judges' retirement system. Thereafter, the petitioner would have been able to secure her spousal annuity by the submission of the respondent's certification of eligibility to the administrative director of the supreme court of appeals, and accompanied by evidence of death and evidence of marriage, for certification of eligibility for spousal annuity in the judges' retirement system to be forwarded to the respondent, who, upon receipt, would have had a duty to present a proposed gubernatorial order forthwith.

The respondent trustee admits the status of the petitioner as widow of Judge DePond.[34] The administrative director of the supreme court of appeals has certified proof of creditable service in excess of twenty-four years for Judge DePond to the governor and the auditor. The respondent trustee has deposited contributions corresponding to the creditable service claimed by Judge DePond into the judges' retirement fund. We therefore find that Mrs. Gloria DePond became the widow of the Honorable Frank J. DePond, Chief Judge of the Seventeenth Judicial Circuit on September 2, 1985; that the Honorable Frank J. DePond, Chief Judge of the Seventeenth

Judicial Circuit had in excess of twenty-four years of creditable service in the judges' retirement system at the time of his death; that the Honorable Frank J. DePond, Chief Judge of the Seventeenth Judicial Circuit had made the required contributions corresponding to in excess of twenty-four years of creditable service into the judges' retirement fund at the time of his death; that the Honorable Frank J. DePond, Chief Judge of the Seventeenth Judicial Circuit was eligible to receive benefits in the judges' retirement system at the time of his death; that Mrs. Gloria DePond has neither died nor remarried; and, that Mrs. Gloria DePond is entitled to a spousal annuity amounting to forty percent (40%) of the annual salary of the office of Chief Judge of a West Virginia Judicial Circuit.

Accordingly, a writ of mandamus is issued against the respondent to prepare his letter of "certification of eligibility for benefits in the judges' retirement system" for Judge DePond;[35] to forward the original and one certified copy of this certification to the petitioner; to forward one certified copy of this certification to the administrative director of the supreme court of appeals; to retain one certified copy of the certification in his office for Judge DePond's permanent retirement file; and, to present forthwith a proposed gubernatorial order and a certified copy of Judge DePond's "certification of eligibility for benefits in the judges' retirement system."[36]

Ordinarily, if no order certifying receipt of judges' retirement system benefits is filed in the office of secretary of state within one month following submission of a request for benefits, proof of eligibility, and a copy of the letter requesting benefits, mandamus will lie against the auditor to order the issuance of warrants necessary for the payment of those benefits. This one month period is defined by prior executive administrative practice and

---

**34.** Granted this admission, it is unnecessary for the petitioner to submit evidence of death or evidence of marriage to the administrative director of the supreme court of appeals.

**35.** Judge DePond's "certification of eligibility for benefits in the judges' retirement system"

prepared by the respondent should follow the format found in Appendix X.

**36.** A proposed order to guide the respondent is found in Appendix XI.

by the clear purpose of the statute. We note that the average month is just over thirty days. Therefore, the auditor trustee has a lawful duty to commence processing for payment benefits from the judges' retirement system on the thirty-first day following an applicant's request of the chief executive for certification of benefits from the judges' retirement system. The Court notices the petitioner's representation that she has made application to the governor. Thus, the one month time period will begin to run upon service of this opinion on the respondent. This provides a sufficient amount of time for execution of the ministerial duties mandated. By the Governor's definition, the longest time lapse between an auditor's transmittal and execution of an order for judges' benefits has been 27 days and the average time lapse between death and gubernatorial execution of an order for widows' annuities has been 26.41 days. Thus, time is available for preparation and presentation of the proposed order by the respondent at the beginning of the thirty day period.[37]

■ As in *Oakley v. Gainer*, 175 W.Va. at 124, 331 S.E.2d at 855, the petitioner is entitled to reasonable attorney fees and costs expended in the prosecution of her claim for judges' retirement benefits under Syllabus Point 4 of *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982), which provides that, "In mandamus proceedings where a public officer willfully fails to obey the law, attorney fees will be awarded." In connection with this award, we note with dismay the unnecessary diminution in the state treasury, in this case with reference to the budget of the respondent's office, caused by the perplexing hesitancy to perform legal obligations when judges' retirement benefits, particularly involving spouses' benefits, are concerned. In *Oakley v. Gainer*, 175 W.Va. at 120–24, 331 S.E.2d at 851–55, the respondent violated his mandatory duties despite the existence of gubernatorial approval of the receipt of retirement benefits. In the present case, the respondent violated his mandatory duties because of the nonexistence of gubernatorial approval of the receipt of retirement benefits. It is difficult to speculate to what sophistry the respondent will next resort. Hopefully, articulation and refinement of the established operating procedure will avoid future conflict.

Accordingly, the petitioner's request for writ of mandamus against the respondent trustee is hereby granted as moulded.

Writ, as moulded, granted.

## APPENDIX I

Honorable _____
Governor of West Virginia
State Capitol Building
Charleston, West Virginia 25305

Dear Governor _____ :

Chapter 51, Article 9, Section 9, Code of West Virginia, 1931, as amended, dealing with the Judges' Retirement System provides that:

'Before any person shall be entitled to retirement benefits under the provisions hereof, he shall submit proof of his eligibility for such benefits to the governor, and if such judge be then in office, he shall at the same time tender to the governor his resignation as a judge upon condition that, if such resignation be accepted he be paid retirement benefits as herein provided. Thereupon the governor shall make such investigation as he shall deem advisable and, if the governor shall determine that such person is entitled to retirement benefits under the provision hereof, the governor shall accept the resignation and certify said facts and the amount of retirement benefits to be paid to said retired judges by a written order to be filed in the office of the

---

**37.** It is difficult to imagine that preparation of a proposed gubernatorial order by the auditor would take longer than a small part of one day.

secretary of state. The secretary of state shall thereupon file a copy of said order with the state auditor. The resignation so accepted shall create a vacancy in said office of judge which shall be filled by appointment or election as provided by law.'

I am enclosing herewith a certified copy of the birth certificate of Judge _____ and his letter of resignation, all of said documents being submitted for the purpose of enabling Judge _____ to receive benefits from the Judges' Retirement Fund.

At the time of his retirement, Judge _____ has been receiving an annual salary of _____ ($___,____) as Judge of the _____ Judicial Circuit of West Virginia.

Under the provisions of Section [6, 6a, or 8], Article 9, Chapter 51, of the aforementioned Code, Judge _____ will be entitled to an annuity equal to seventy-five percent of salary of the Judge holding office in the _____ Judicial Circuit of West Virginia, as long as he lives, such benefits to begin with the month of _____, 19__, at a rate of $___,____ per annum. This rate may be subject to change due to the Judicial Reorganization Amendment.

I have prepared an Order for your consideration in certifying these facts as provided by statute, in order that Judge _____ may begin receiving the benefits provided thereunder.

Sincerely yours,

State Auditor
Fiscal Officer for
Judges' Retirement Fund

Honorable _____, Judge
_____ Judicial Circuit
State of West Virginia
_____, West Virginia 2_____

Dear Judge _____:

This will acknowledge receipt of your letter requesting judicial retirement benefits pursuant to the provisions of Code, 1931, Chapter 51, Article 9, as amended, effective _____ __, 19__

In order that your retirement benefits may be processed properly, I am forwarding a copy of your letter and Certificate to _____ in the Auditor's Office, so that [s]he may prepare an Order for me as Governor to direct the Secretary of State, making you eligible for retirement benefits.

Judge _____, I want to commend you on the great service you have performed for the State of West Virginia and wish you good health and happiness in your years of retirement.

With kindest regards,

Sincerely,

GOVERNOR

STATE OF WEST VIRGINIA
EXECUTIVE DEPARTMENT
CHARLESTON

## ORDER

#### By the Governor

I, _____, Governor of the State of West Virginia, by virtue of Chapter 34, Acts of the Legislature, Regular Session, 1949, as amended, do hereby certify that the Honorable _____, _____, _____ County, West Virginia, Judge of the _____ Judicial Circuit, has fulfilled the eligibility requirements as provided by Section [6 or 6a], Article 9, Chapter 51, of the Code of West Virginia, 1931, as amended, in that he has served as Judge of a Court of Record of this State for a period of not less than _____ years [after the age of sixty-five years] or [and has reached the age of sixty-five years]. According to the provisions of Section ___ of the aforesaid Act, said _____ is eligible to receive from the Judge's Retirement Fund an amount equal to seventy-five (75%) percent of the salary of the Judge of the _____ Judicial Circuit, West Virginia ($__,____), so long as he lives, such benefits to begin with the month of _____, 19__, at the rate of _____ ($__,____) per annum.

The letter by which he submitted his resignation and request for benefits is attached and made a part of this Order along with the certification of birth and other certification.

I hereby direct _____, Secretary of State, to certify a copy of this Order to _____, Auditor of the State of West Virginia, for payment.

IN WITNESS, I have hereunto set my hand and caused the Great Seal of the State to be affixed.

> DONE at the Capitol, in the City of Charleston, State of West Virginia, this the ___ day of _____, in the year of Our Lord, One Thousand Nine Hundred _____ and in the One Hundred _____ year of the State.

#### GOVERNOR

BY THE GOVERNOR
SECRETARY OF STATE

AFFIDAVIT, IN RE, JUDGE'S RETIREMENT
SYSTEM, _____, WIDOW.

State of West Virginia,

County of _____, to-wit:

_____, being first duly sworn, deposes and says:

(1) That she was married to _____ on the ___ day of _____, 19__, a copy of the marriage certificate being attached hereto as a part hereof.

(2) That _____ departed this life on the ___ day of _____, 19__, a copy of the death certificate being attached hereto as a part hereof.

(3) That said _____ and _____, husband and wife, lived together as husband and wife from the date of their said marriage until the date of his death on the _____ day of _____, 19__, and that the said _____ has not remarried.

(4) That said _____ was elected, qualified, and served as Judge of the Circuit Court of the _____ Judicial Circuit of West Virginia, those courts being courts of record, for a continuous period of _____ years.

(5) That said _____ was receiving a salary of $__,_____ per year at the time of his decease, as Judge of said Courts, and that the said undersigned _____, as the surviving unmarried widow of the said decedent Judge, is entitled to receive benefits equal to forty percent (40%) of the said annual salary of $__,_____ per year, and hereby makes application for the same.

Given under my hand this _____ day of _____, 19__.

_____
Affiant.

Taken, subscribed, and sworn to before me by _____, and given under my hand, this ____ day of _____, 19__.

_____
Notary Public

My Commission expires _____.

Honorable _____
Governor of West Virginia
State Capitol Building
Charleston, West Virginia 25305

Dear Governor _____ :

Chapter 51, Article 9, Section 9, Code of West Virginia, 1931, as amended, dealing with the Judges' Retirement System provides that:

"Before any person shall be entitled to retirement benefits under the provisions hereof, he shall submit proof of his eligibility for such benefits to the governor, and if such judge be then in office, he shall at the same time tender to the governor his resignation as a judge upon condition that, if such resignation be accepted he be paid retirement benefits as herein provided. Thereupon the governor shall make such investigation as he shall deem advisable and, if the governor shall determine that such person is entitled to retirement benefits under the provisions hereof, the governor shall accept the resignation and certify said facts and the amount of retirement benefits to be paid to said retired judges by a written order to be filed in the office of the secretary of state. The secretary of state shall thereupon file a certified copy of said order with the state auditor. The resignation so accepted shall create a vacancy in said office of judge which shall be filled by appointment or election as provided by law."

The 1961 Legislature amended this article by adding thereto Section 6(b) which provides for an annuity to the widow of a judge; the 1967 Legislature amended Section 6(b) to read, in part, as follows:

"There shall be paid, from the fund created by section two of this article, an annuity to the widow of a judge, who, at death, is eligible for the retirement benefits, provided by section six, six-a, or eight of this article, or . . . a judge of any court of record of this State . . . ."

Section 9 was not repealed and apparently applies to any person entitled to retirement benefits under this Article.

I am enclosing herewith a certified copy of the death certificate of _____, a certified copy of the marriage license certificate of _____ and _____, and an affidavit outlining all certain pertinent information, all of said documents being submitted for the purpose of enabling Mrs. _____ to receive benefits from the Judges' Retirement Fund.

At the time of his death, Judge _____ was receiving an annual salary of _____ ($__,____) as judge [retirant] of the _____ Judicial Circuit of West Virginia.

Under the provisions of Chapter 51, Article 9, Section 6(b), of the aforementioned Code, Mrs. _____ will be entitled to an annuity equal to forty percent of the salary of the Judge of the _____ Judicial Circuit of West Virginia, as long as she lives or remains the widow of Judge _____, such benefits to begin with the month of _____, 19__, at the rate of $__,____ per annum.

I have prepared an ORDER for your consideration in certifying these facts as provided by statute, in order that Mrs. _____ may begin receiving the benefits provided thereunder.

Sincerely yours,

State Auditor
Fiscal Officer for Judges'
Retirement Fund

## STATE OF WEST VIRGINIA
## EXECUTIVE DEPARTMENT
## CHARLESTON

### ORDER
### By the Governor

I, _____, Governor of the State of West Virginia, by virtue of Chapter 34, Acts of Legislature, Regular Session, 1949, as amended, do hereby certify that _____ of _____, _____ County, West Virginia, widow of the Honorable _____, deceased, has fulfilled the eligibility requirements, as provided by Chapter 51, Article 9, Section 9 of the Code of West Virginia, 1931, as amended, in that she was married to _____ on the ___ day of _____, 19__; that she and _____ lived together since their marriage until the death of _____ on _____ ___, 19__; that she is now the widow of _____; that proof has been furnished showing the date and cause of death of said _____; that said _____ was at the time of his death receiving [entitled to receive] benefits from the Judges' Retirement Fund pursuant to the provisions of Chapter 51, Article 9, Section [6, 6a, or 8], Code of West Virginia, 1931, as amended; and according to the provisions of Section [6, 6a, or 8] of the aforesaid Act, as amended by the Acts of the Legislature of 1967 (Chapter 44), which became effective on the 24th day of February, 1967, said _____ is eligible to receive an amount equal to forty percent (40%) of the salary of the Judge of the _____ Judicial Circuit, West Virginia, ($__,____), so long as she lives or remains the widow of _____, such benefits to begin with the month of _____, 19__, at the rate of _____ ($__,____) per annum; that said Judge _____ served as Judge of the Circuit Courts of the _____ Judicial Circuit of West Virginia, these courts being courts of record, for a continuous period from _____ ___, 19__ to _____ ___, 19__, constituting _____ years.

A certified copy of the death certificate, the marriage license certificate and an affidavit outlining all necessary information are hereto attached and made a part of this Order.

I hereby direct _____, Secretary of State, to certify a copy of this Order to _____, Auditor of the State of West Virginia, for payment.

IN WITNESS WHEREOF, I have herewith set my hand and caused the Great Seal of the State to be affixed.

Done at the Capitol, in the City of Charleston, State of West Virginia, this the ___ day of _____, in the year of our Lord, One Thousand Nine Hundred and _____ and in the One Hundred and _____ year of the State.

GOVERNOR

By the Governor
Secretary of State

## STATE OF WEST VIRGINIA
## EXECUTIVE DEPARTMENT
## CHARLESTON

### CERTIFICATION OF ELIGIBILITY FOR BENEFITS
### IN JUDGES' RETIREMENT SYSTEM

By the Auditor

The Auditor of the State of West Virginia, by virtue of Chapter 34, Acts of the Legislature, Regular Session, 1949, as amended, hereby certifies that the Honorable _____, _____, _____ County, West Virginia, [Chief Judge or Judge of the _____ Judicial Circuit] or [Chief Justice or Justice of the Supreme Court of Appeals], has fulfilled the eligibility requirements as provided by Section [6 or 6a], Article 9, Chapter 51, of the Code of West Virginia, 1931, as amended, in that [he or she] has creditable service in the Judges' Retirement System of [twenty-four years] or [sixteen years and has reached the age of sixty-five years] or [eight years after the age of sixty-five years] and has deposited required contributions corresponding to such service in the Judges' Retirement Fund. According to the provisions of Section Four of the aforesaid Act, _____ is now eligible to receive from the Judges' Retirement Fund an amount equal to seventy-five percent (75%) of the salary of a [Chief Circuit Judge or Circuit Judge] or [Chief Justice or Justice of the Supreme Court of Appeals], so long as [he or she] lives.

IN WITNESS, I have hereunto set my hand and caused the Great Seal of the State to be affixed.

DONE at the Capitol, in the City of Charleston, State of West Virginia, this the ___ day of _____, in the year of Our Lord, One Thousand Nine Hundred _____ and in the One Hundred _____ year of the State.

AUDITOR

BY THE AUDITOR
SECRETARY OF STATE

STATE OF WEST VIRGINIA
EXECUTIVE DEPARTMENT
CHARLESTON

ORDER

By the Governor

The Governor of the State of West Virginia, by virtue of Chapter 34, Acts of the Legislature, Regular Session, 1949, as amended, hereby certifies that the Honorable _____, _____, _____ County, West Virginia, [Chief Judge or Judge of the _____ Judicial Circuit] or [Chief Justice or Justice of the Supreme Court of Appeals], has fulfilled the eligibility requirements as provided by Section [6 or 6a], Article 9, Chapter 51, of the Code of West Virginia, 1931, as amended, in that [he or she] has credited service in the Judges' Retirement System of [twenty-four years] or [sixteen years and has reached the age of sixty-five years] or [eight years after reaching the age of sixty-five years]. According to the provisions of Section [Six or Six-a] of the aforesaid Act, _____ is eligible to receive from the Judges' Retirement Fund an amount equal to seventy-five percent (75%) of the salary of a [Chief Circuit Judge or Circuit Judge] or [Chief Justice or Justice of the Supreme Court of Appeals], so long as [he or she] lives, such benefits to begin with the month of _____, 19___.

I hereby direct the Secretary of State to certify a copy of this Order to the Auditor of the State of West Virginia for payment.

IN WITNESS, I have hereunto set my hand and caused the Great Seal of the State to be affixed.

DONE at the Capitol, in the City of Charleston, State of West Virginia, this ___ day of _____, in the year of Our Lord, One Thousand Nine Hundred _____ and in the One Hundred _____ year of the State.

GOVERNOR

BY THE GOVERNOR

SECRETARY OF STATE

STATE OF WEST VIRGINIA
EXECUTIVE DEPARTMENT
CHARLESTON

ORDER

By the Governor

The Governor of the State of West Virginia, by virtue of Chapter 34, Acts of the Legislature, Regular Session, 1949, as amended, hereby certifies that _____ of _____, _____ County, West Virginia, surviving spouse of the Honorable _____, deceased, has fulfilled the eligibility requirements, as provided by Chapter 51, Article 9, Section 6b of the Code of West Virginia, 1931, as amended, in that [he or she] was married to _____ on the _____ day of _____, 19___; that _____ died on the ___ day of _____, 19___; that [he or she] is the surviving spouse of _____ and has not remarried; and, that, at the time of [his or her] death, _____ was [receiving] or [entitled to receive] benefits from the Judges' Retirement Fund pursuant to the provisions of

Chapter 51, Article 9, Section [6, 6a, or 8] Code of West Virginia, 1931, as amended. According to the provision of Section 6b of the aforesaid Act, as amended by the Acts of the Legislature of 1967 (Chapter 44), which became effective on the 24th day of February, 1967, said _____ is eligible to receive an amount equal to forty percent (40%) of the salary of a [Chief Circuit Judge or Circuit Judge] or [Chief Justice or Justice of the Supreme Court of Appeals], so long as [he or she] lives and remains the surviving spouse of _____, such benefits to begin with the month of _____, 19__.

I hereby direct the Secretary of State to certify a copy of this Order to the Auditor of the State of West Virginia for payment.

IN WITNESS, I have hereunto set my hand and caused the Great Seal of the State to be affixed.

DONE at the Capitol, in the City of Charleston, State of West Virginia, this ___ day of _____, in the year of Our Lord, One Thousand Nine Hundred _____ and in the One Hundred _____ year of the State.

GOVERNOR

BY THE GOVERNOR

SECRETARY OF STATE

STATE OF WEST VIRGINIA
EXECUTIVE DEPARTMENT
CHARLESTON

CERTIFICATION OF ELIGIBILITY FOR BENEFITS
IN THE JUDGES' RETIREMENT SYSTEM

By the Auditor

The Auditor of the State of West Virginia, by virtue of Chapter 34, Acts of the Legislature, Regular Session, 1949, as amended, hereby certifies that the Honorable Frank J. DePond, Morgantown, Monongalia County, West Virginia, Chief Judge of the Seventeenth Judicial Circuit, has fulfilled the eligibility requirements as provided by Section 6, Article 9, Chapter 51, of the Code of West Virginia, 1931, as amended, in that he has creditable service in the Judges' Retirement System of twenty-four years and has deposited required contributions corresponding to such service in the Judges' Retirement Fund. According to the provisions of Section Four of the aforesaid Act, Frank J. DePond is now eligible to receive benefits from the Judges' Retirement Fund an amount equal to seventy-five percent (75%) of the salary of a Chief Circuit Judge, so long as he lives.

IN WITNESS, I have hereunto set my hand and caused the Great Seal of the State to be affixed.

DONE at the Capitol, in the City of Charleston, State of West Virginia, this ___ day of March, in the year of Our Lord, One Thousand Nine Hundred Eighty-Six and in the One Hundred Twenty-Third year of the State.

AUDITOR

BY THE AUDITOR

SECRETARY OF STATE

STATE OF WEST VIRGINIA
EXECUTIVE DEPARTMENT
CHARLESTON
ORDER

By the Governor

The Governor of the State of West Virginia, by virtue of Chapter 34, Acts of the Legislature, Regular Session, 1949, as amended, hereby certifies that Gloria DePond of Morgantown, Monongalia County, West Virginia, surviving spouse of the Honorable Frank J. DePond, deceased, has fulfilled the eligibility requirements, as provided by Chapter 51, Article 9, Section 6b of the Code of West Virginia, 1931, as amended. According to the provisions of Section 6b of the aforesaid Act, as amended by the Acts of the Legislature of 1967 (Chapter 44), which became effective on the 24th day of February, 1967, said Gloria DePond is eligible to receive an amount equal to forty percent (40%) of the salary of a Chief Circuit Judge, so long as she lives and remains the surviving spouse of Frank J. DePond, such benefits to begin with the month of September, 1985.

I hereby direct the Secretary of State to certify a copy of this Order to the Auditor of the State of West Virginia for payment.

IN WITNESS, I have hereunto set my hand and caused the Great Seal of the State to be affixed.

> DONE at the Capitol, in the City of Charleston, State of West Virginia, this ___ day of March, in the year of Our Lord, One Thousand Nine Hundred Eighty-Six and in the One Hundred Twenty-Third year of the State.

GOVERNOR

BY THE GOVERNOR
SECRETARY OF STATE

---

BROTHERTON, Justice, dissenting:

I dissent to the Court's opinion in this matter because it is a continuation of the illegal, unfounded, unsupportable course set by this Court in the case of *In re Dostert*.[1] I review the *Dostert* opinion as a part of this dissent because *DePond*, like the vertex of a pyramid, is based on the foundation set forth in *Dostert*.

The *Dostert* opinion redrafted the judicial pension plan, making several important changes in W.Va.Code § 51-9-6 (1981), as follows:

1. A provision which allowed a judge who was called into the military during his judicial term to credit this time toward his retirement, was converted to: Credit for military service *or its equivalent* whenever served.[2]

1. *In re Dostert*, 174 W.Va. 258, 324 S.E.2d 402 (1984).

2. *See id.* at 416–17.

2. A provision which credited service as a prosecuting attorney as years of judicial service, became:

Credit for *any* prior service to this State or a political subdivision thereof.[3]

3. A requirement that all years of service be fully served, became:

A provision which allows part-time service to be counted as full-time service.[4]

4. Creation of a system for calculating the amount of contributions necessary to claim retroactive credit for years of service invented by the first three changes.[5]

*In re Dostert* is flawed in two major aspects, one constitutional (State and Federal) and one procedural. the majority opinion in this case is wrong because it relies entirely on the unconstitutional *In re Dostert* decision. The *DePond* decision compounds this wrong by expanding its holdings. The two cases are twin sisters and must be reviewed together.

## I. VIOLATION OF STATE AND FEDERAL CONSTITUTIONS

### A. *Violation of West Virginia Constitution*

The West Virginia Constitution, Art. VIII, § 7, provides that the compensation of judges and justices shall be fixed as any other law, that is, by the legislature.[6] *In re Dostert* attempts to fix the compensation of judges by Court opinion and not by law.[7] This Court, in syllabus point 8 of *In re Dostert*, states: "West Virginia Retirement System for judges creates contractual vested property rights for retired and active participating plan members, and these rights are enforceable and cannot be impaired or diminished by the State," citing syllabus point 1, *Wagoner v. Gainer.*[8] *Wagoner*, however, was based on statutes enacted by the legislature. It cannot be cited as authority for vesting contractual rights in judges based on rights created by Court opinions such as *Dostert* and *DePond.* The pension, being part of the salary of a justice and judge, must be fixed by the legislature. Even a cursory reading of *In re Dostert* reveals that the judicial pension system was redrafted by Court opinion and not fixed by law.

The fact that *In re Dostert* fixed compensation (retirement benefits) by opinion and not by law makes the benefits derived therefrom unconstitutional.[9] The benefits, therefore, are not a contractual right binding on later courts that might have the matter again brought to their attention. The *Dostert* opinion is fatally flawed because it is based on an unconstitutional premise, and those who take from the poison tree may find at a later date, in a decision by another court, that they in fact do not have any vested rights and do not qualify for a judicial pension under the terms and conditions set out by *Dostert.*

### B. *Violation of Federal Constitution*

The validity of *In re Dostert* is also in jeopardy because of a recent United States Supreme Court decision which held that a

---

3. *See id.* at 417–18.

4. *See id.* at 418–19 nn. 33 & 37.

5. *See id.* n. 35.

6. 4 "Justices, judges and magistrates shall receive the *salaries fixed by law,* which shall be paid entirely out of the State Treasury, and which may be increased but shall not diminished during their term of office, and they shall receive expenses as provided by law." (emphasis added).

7. To try to distinguish between "salary" and overall compensation in this situation would be to eviscerate the intent of the framers of our state constitution. This Court equated retirement benefits with salary in *In re Dostert,* 174 W.Va. 258, 324 S.E.2d 402, 411 (1984), when it said: " ... West Virginia Code § 51–9–6 (1981 Replacement Volume) contemplates that judges retain their positions, accruing retirement benefits as an *element of judicial compensation* which accompany those positions ..."

8. *Wagoner v. Gainer,* 167 W.Va. 139, 279 S.E.2d 636 (1981).

9. This Court has the power, when absolutely necessary, to declare acts of the legislature *void* as unconstitutional. We do not have the power to selectively edit so as to bring about a material change. *See, e.g.,* syl. pt. 20, *State ex rel. Trent v. Sims,* 138 W.Va. 244, 77 S.E.2d 122 (1953). This is judicial legislation, which by definition is unconstitutional and therefore void. *See* W.Va. Const. art. V, § 1.

judge sitting on a case in which he has a *direct pecuniary* interest violates the due process clause of the 14th amendment of the United States Constitution.[10] Some of the majority [11] in *Dostert* have a direct pecuniary interest from the decision, and therefore should not have participated in the case.[12]

## II. PROCEDURAL PROBLEMS

The second error that makes *In re Dostert* invalid, and thereby invalidates the majority opinion in this case, is procedural.

### A. *An invented case*

*In re Dostert*, when it came to this Court, was an extraordinary judicial disciplinary proceeding arising under Rule II(J) of the Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates. The only party before the Court was Judge Pierre E. Dostert. The issue before the Court was whether to suspend Judge Dostert, after he had been convicted of criminal contempt. *The case had nothing to do with judicial pensions.*[13] Nevertheless, the Court wanted a different pension plan and was not patient enough for a case to be brought by normal means.

Further, necessary parties, *i.e.*, the President of the West Virginia Senate and the Speaker of the West Virginia House of Delegates, were not present.[14] These two parties are necessary because they represent the constitutional bodies of the legislative branch of government that fix salaries of the judiciary by law.[15]

This Court only has the power to decide cases before it. An invented controversy without proper parties is not a case but an attempt to draft legislation. Therefore,

that part of *In re Dostert* that deals with retirement issues is mere dicta and should be of no effect in a subsequent case.

## III. THE DOCTRINE OF BENEFICIAL TRANSFERABILITY

All judicial pronouncements must stand on some pretense of law. The Court, therefore, needed some law on which to base its holding. No existing standard would support their holdings, so the Court created a new doctrine: *The Doctrine of Beneficial Transferability.*[16] Evidently the doctrine provides that a court may transfer statutory language from one legislative plan (the Public Employees Retirement System) to another plan (the Judicial Retirement System), and may transfer only those parts of the language which give the greatest benefits and disregard any of those parts which are not beneficial. The majority opinion in *Dostert* cites no authority for this proposition. (Indeed, none exists!!) An examination of the different areas where the doctrine was applied shows its weakness.

### A. *Military service*

The majority first scanned the other retirement systems like an eager shopper leafing through the Sears catalog:

> With respect to the military service credit provision, we note that general grants of retirement credit for military service are found in three of this State's other retirement systems. *See* West Virginia Code § 5–10–15 (1979 Replacement Vol.) (public employees); West Virginia Code § 15–2–28(b) (1979 Replacement Vol.) (department of public safety); West Virgi-

---

10. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).

11. Justice Miller did not participate in the case and Justice Neely dissented.

12. *See also* W.Va. Judicial Code of Ethics, Canon 3(c)(1)(c).

13. Further, Judge Dostert was not even a member of the judicial retirement system, instead he had elected to participate in the public employees retirement system. *See* 174 W.Va. at 266, 324 S.E.2d at 410.

14. The retirement issues brought before the Court in *In re Dostert* were created by a request of the Court to the Court administrator to file pleadings raising the retirement issues and, therefore, no one raised the question of a lack of proper parties who might have an adversarial interest in the outcome of the issues created by the Court administrator.

15. *See* W.Va. Const. art. VIII, § 7.

16. The majority did not give a name to the doctrine, but used it extensively.

nia Code § 18–7A–17 (Supp.1984) (teachers).

Furthermore, it is important to note that many of the judicial retirement systems in other states contain general grants of prior military service credit. *See, e.g.,* Ala.Code § 12–18–5(b) (Supp.1984); Fla. Stat.Ann. § 121.111 (West 1982); Mich. Comp.Laws Ann. § 38.813b (West Supp. 1984); Miss.Code Ann. § 25–11–117 (Supp.1983); N.Y.Retire. & Soc.Sec.Law §§ 24(d), 24(e), 29, 29–a, 30, and 31 (McKinney 1971 & Supp.1983); Ohio Rev. Code Ann. § 145.30.1 (Page 1984); 71 Pa.Cons.Stat.Ann. § 5304 (Purdon Supp. 1984); S.C.Code Ann. § 9–8–50(3) (Supp. 1983); Tex.Rev.Civ.Stat.Ann. art. 43.103 (Vernon Supp.1983); Utah Code Ann. § 49–7a–41 (Supp.1983); Wis.Stat.Ann. § 40.02(15)(c) (West Supp.1983).

(Footnote added to text) [17]

After finding what they wanted, the majority placed an order. They took the second paragraph of W.Va.Code § 51–9–6 [18] and rewrote it. The part of the section granting service credit for *active* military service during a judge's term of office was declared unconstitutional because it violated the constitutional provision against dual office holding in W.Va. Const. Art. VIII § 7. The section provides that a violation of that provision vacates the judicial office.[19] The majority simply ignored that admonition and instead struck those words from the paragraph. The military service credit portion of Section 6 reads as follows:

In determining eligibility for the benefits provided by this section, *any portion of the term of office of any judge of a court of record which shall have elapsed while such judge was on* active duty ... in the armed forces of the United States shall be considered as served ...

The majority declared the emphasized portion of Section 6 unconstitutional and deleted it from the statute.[20] That left the section to read "In determining eligibility for the benefits provided by this section ... active duty ... in the armed forces of the United States shall be considered as served...." [21]

West Virginia Code § 51–9–16 allows sections, subsections, clauses, phrases or requirements of the judicial pension system to be declared unconstitutional without affecting the validity of the remaining portions. This Court has held on numerous occasions that unconstitutional portions of a statute may be deleted without affecting the remainder of the statute, *unless the remainder is incapable of being executed in accordance with legislative intent.* The Court in *Dostert* made no attempt to be consistent with legislative intent. Instead they used selective editing to rewrite the statute contrary to legislative intent. We do not have the power to selectively edit so as to bring about a material

17. *In re Dostert,* 174 W.Va. 258, 324 S.E.2d 402, 416 (1984).

18. ... In determining eligibility for the benefits provided by this section, any portion of the term of office of any judge of a court of record which shall have elapsed while such judge was on active duty (including leaves, furloughs, and time consumed going to his place of duty and returning to his place of residence after discharge or release from active duty) in the armed forces of the United States shall be considered as served: Provided further, that any judge who enters active duty in the armed forces of the United States during his term of office and after the effective date [June 5, 1949] of this article shall during, or within one year after such military service, pay into the state treasury all contributions required by section four [§ 51–9–4] of this article, and, by reason of such military service not deducted from his salary: Provided further, that if a judge of a court of record has served for a period of not less than ten full years and has made payments into the judges retirement fund as provided in this article for each month during which he served as judge, following the effective date of this section, any portion of time which he had served as prosecuting attorney in any county in this State shall qualify as years of service. W.Va.Code § 51–9–6.

19. I wonder what the pronouncement does to those judges who may be in the national guard and the reserves, both of which require an oath and appointment to such position by a government other than the State of West Virginia.

20. 174 W.Va. at 272–73, 324 S.E.2d at 416.

21. *Id.*

change.[22] This is judicial legislation, which by definition is unconstitutional and therefore void.[23]

The majority opinion went on to say: Accordingly, we limit the scope of our holding in conformance with the severability statutes and case law and the *presumed* intent of the legislature, and hold that military service, *or its equivalent,* rendered during a period of compulsory military service "shall be considered as served" under W.Va.Code § 51–9–6 for disability and retirement benefits.

(Emphasis added).[24] Can anyone believe that the Court's revisions were the intent of the legislature, either actual or *presumed?* The legislature intended the provision to apply to military service by a judge who had his term of office interrupted, not to all military service, and there is no provision in any state retirement system that provides for military service *or its equivalent.*[25] Section 6 does not even allow for that interpretation in the redrafted form.

The doctrine of beneficial transferability, therefore, takes this military service credit of the Public Employees Retirement System and transfers it to the Judicial Retirement System.

### B. *Other governmental service*

The further massacre of § 51–9–6 deals with the provision allowing judges credit in the retirement system for service as prosecuting attorney in any county. The provision reads as follows:

Provided further, that if a judge of a court of record has served for a period of not less than ten full years and has made payments into the judges retirement fund as provided in this article for each month during which he served as judge, following the effective date of this section, any portion of time which he had served *as prosecuting attorney in any county* in this State shall qualify as years of service.

The majority in *Dostert* held that this provision violated the constitutional prohibition against special legislation and held that language unconstitutional, and therefore deleted the emphasized phrase, totally changing the statute's meaning. Now Pandora's box is fully opened, but in order to benefit from the goodies inside, it was necessary to go further, because striking the language "as prosecuting attorney in any county" gave judges credit for prior service only if they had served "*in* this State," a meaningless phrase. The purpose of the holding was to change the wording of section 6 so that it would allow a judge who had ten full years of credited service (judicial and military) to also credit any portion of time which he had served in government *in* this State as qualifying years of service in order to qualify for benefits under the Judicial Retirement System. To allow credit for all government service, the majority invented a broad new definition for the word "*in.*" In footnote 32 of the majority opinion "in" is defined as follows:

"In" connotes service to the State of West Virginia or any of its political subdivisions. The Administrative Director should *view the word "in" to mean "political subdivision"* as defined in the public employees retirement system statute. (emphasis added).

I wish the majority had included the cite to the dictionary from which they obtained this incredible definition of the word "in."

**22.** *See, e.g.,* syl. pt. 20, *State ex rel. Trent v. Sims,* 138 W.Va. 244, 77 S.E.2d 122 (1953).

**23.** *See* W.Va. Const. art. V, § 1.

**24.** 174 W.Va. at 273, 324 S.E.2d at 416–17.

**25.** "Or its equivalent" is an expandable term not in the statute. It should, at a minimum, be confined to the definition in 50 U.S.C.App. 456(j) (1982), footnoted by Justice McGraw in the opinion, which concerns alternative service for conscientious objectors. *See* 174 W.Va. at

273 n. 27, 324 S.E.2d at 417 n. 27. Otherwise the proverbial floodgates will be opened, pouring out credit for many different types of service, including, but not limited to, service in the national guard, military reserve, military academies, volunteer service, or just about anything more rigorous than the Boy Scouts. Despite the majority opinion's massive rhetoric and citations that when unconstitutional language is stricken from a section the Court should presume the legislature would have enacted the remaining valid provisions without the uncon-

The preposition "in" not only opened up credit for all prior service to this State or any of its political subdivisions, but note 33 interprets severability statutes, case law and the *presumed* intent of the legislature to include retroactive governmental service in this State for full *or part-time* service, whether by employment, election or appointment by the State of West Virginia or any of its political subdivisions. Since there is no language in the Judicial Retirement System dealing with prior service in this State or its political subdivisions, it was necessary to transfer the beneficial language in the Public Employees Retirement System to the Judicial Retirement System. The majority therefore adopted the definition of a political subdivision from W.Va.Code § 5–10–2(4) (1979) of the Public Employees Retirement System. For some reason no mention was made of W.Va.Code § 5–10–2(5) (1979) of the same system, defining "participating public employer" to mean:

> ... the State of West Virginia, any board, commission, department, institution or spending unit, and shall include any agency created by rule of the supreme court of appeals having full-time employees, which for the purpose of this article shall be deemed a department of state government; and *any political subdivision in the State which has elected to cover its employees, as defined in this article, under the West Virginia public employees retirement system.*

(emphasis added). The majority opinion simply granted retroactive governmental service to judges without any regard to whether the employer of the judge had been a covered employer, i.e., making the payments into the Public Employees Retirement System as set forth in the act.

The doctrine of beneficial transferability took the credit for governmental service as defined in the Public Employees Retirement System and transferred it to the Judi-

cial Retirement System without the requirement that the employer must be a participating employer.

## C. *Full-time equals part-time*

The lid on Pandora's box has been ripped asunder, and the hand of rhetoric has reached in and taken the skeletal form of the Public Employees Retirement System to be the new skeletal form of the Judicial Retirement System. But, alas, why stop there? If full benefit of the retroactive governmental service was to benefit those who were rewriting the Judicial Retirement System, it was necessary to graft another appendage to the skeletal form, having to do with the definition of full-time and part-time service. Note 37 of *Dostert* points out that the legislature, by statute defined full-time employees to include members of the State Legislature, the clerk of the House of Delegates, the clerk of the State Senate, members of the legislative body of any political subdivision, and judges of the State Court of Claims. These are "employees" elected or appointed for definite terms. The majority used that grant as a basis for granting full credit to judges in the judicial pension system for part-time service to the State or a political subdivision. This application of the doctrine of beneficial transferability goes far beyond even the statute from which it is borrowed.

This Court in *Campbell v. Kelly,* 157 W.Va. 453, 202 S.E.2d 369 (1974) had reviewed the Public Employees Retirement System as it applied to the West Virginia legislature. In doing so they struck out several special benefits the legislators provided for themselves.[26] The Court did not, however, strike down the provision of one year's credit for one year's elected service or one year's tenure service.

Because certain elected and appointed non-executive branch officers and employees are granted a full year's credit service without actually working the necessary six-

---

stitutional or void ones, they add the words "or its equivalent" to the statute.

**26.** The Court limited legislators to credit for their salary *actually received* instead of multiplying their salary by eight times. Further, legislators were forbidden from receiving credit

from the system for two employments simultaneously. The Court also struck down that part of the statute which granted increased annuities to members of the legislature who had retired because they were benefits not provided other public employees.

teen days of a month for ten months in any one year to qualify for a year's credited service, the Court in *Dostert* granted *all* members of the judiciary full-time credit for *any* part-time service. That is utter nonsense. None of those tenured non-executive branch officers and employees who received full-time credit for so-called part-time service under the Public Employees Retirement System got a year's credit when they worked two months as a clerk of a legislative committee, worked part-time for an administrative agency of the executive, or worked part-time for a political subdivision prior to election or appointment to the tenured class, or after leaving the tenured class. Further, if the grant of credit was special legislation, that evil would be better cured by restricting credit for legislative service to actual time served, than by extending credit for a myriad of part-time positions bearing no relation to judiciary service. There is no rationale, no logic, that says certain non-executive elective officers granted a full year's credit for elective term applies in any manner to the judicial branch of government. A legislator receives no full-year credit for part-time governmental service performed prior to his election or performed after he leaves legislative service.[27] The justices of this Court granted themselves a right that no other person had.

### D. *Contributions*

The grant of retroactive governmental service by Court opinion requires some methodology for making retirement payments to the fund for the period of retroactive governmental service claimed. Of course the Court rose to the task. By judicial enactment, a methodology was created for retroactive contributions to the

Judicial Retirement System. In note 35 of the *Dostert* opinion the majority uses the compensation rate of payments made to a special judge ($15.00 per day in 1949; currently $100.00 per day) as a guide. Fifteen dollars multiplied by 250 working days in a calendar year produces a salary of $3,750.00, of which the judge would then be required to pay 6%, or $225.00.[28] This calculation has no basis in reality and allows a justice to, in essence, buy a dollar for seven cents.[29] Apparently if the judge electing to seek credit for prior governmental service made the payment promptly, he would not have to pay the 4% interest, although that is not entirely clear. *Dostert* relies on W.Va.Code § 51–9–5 (1981) for the authority for the payment into the Judicial Retirement System, but the legislature never intended the per diem compensation of special judges to be the basis for contributions to the Judicial Retirement System. Even if W.Va.Code § 51–9–5 would allow public employees credit to be given as judicial service, the 6% payment should be based on the salary paid to judges at the time for the years of claimed retroactive governmental service, not on some contrived salary of $3,750.00 which was neither paid to nor received by any of those claiming retroactive governmental service, and payment should be accompanied by interest at a realistic rate, compounded annually.

## IV. EXPANDING *DOSTERT*

### A. *The Doctrine of Beneficial Transferability Revisited*

Now we turn our attention to the present case of *Gloria DePond v. Hon. Glen B. Gainer, Jr., Auditor of West Virginia.* This opinion immediately starts out with the litany concerning what is credited judi-

---

**27.** The legislature in 1985 amended W.Va.Code § 5–10–17 to allow part-time legislative employees who have worked on a part-time or temporary basis for the legislature for ten years to join the Public Employees Retirement System and receive one month's credited service for any calendar month. They were not granted a full year's credited time for any year in which they had worked one credited month. *See* W.Va. Code § 5–10–17 (1985) and Public Employees Retirement System implementation of the amended section.

**28.** Based on service in 1949.

**29.** The dollar for seven cents is only my unskilled estimate. Note 35 of *Dostert* allows a year of back service to be purchased for $225.00. I arrived at the figure of seven percent by taking the $225.00 and dividing it by $3,300.00, the amount a justice must currently contribute to the pension fund for a year of service credit.

cial service. What is actually credited is not necessarily set out in the text, but in footnote 1. The footnote reiterates the legal doctrine of transferability and points out that because of *In re Dostert* judges are entitled to judicial credit for full or part-time governmental service without the liabilities for that service as imposed on those members of the government who participate in the Public Employees Retirement System. In order to give some logic to this grab of credited service, the majority relies again, as it did in *Dostert*, on the fact that W.Va.Code § 5–10–2 (1985) holds that certain elected officials, i.e., legislators, county commissioners, city councilmen, and others are entitled to count a full year for the time that they serve as an elected official. This is statutory and carries with it certain requirements and limitations, and it has been approved by this Court in *Campbell v. Kelly, supra.* Only certain elected and appointed officials are included in the statutory language, and other public employees do not receive that credit. The breakdown in the majority opinion granting this credit to judges is the fact that those elected officials who get full-time credit for their elective office do not get full-time credit for part-time service in other public service prior to or after their elective tenure, but must work ten months in any one year to get a full year's credit. Yet we have seen by the majority opinions in *Dostert* and *DePond* a sweeping grant of credited service for judges unlike that granted other public employees, including those elected. There is no authority for this rationale.

Note 4 of *DePond* goes on at great length about the benefit of the Public Employees Retirement System compared to the Judicial Retirement System, as did a number of footnotes in *Dostert.* I assume that this recitation is intended to show how unjust the legislature has been to judges. That is about as far removed from the facts as anything could be, because provisions in the Public Employees Retirement System allowed judges to join the system to give them some retirement protection

until such time as they were able to qualify under the Judicial Retirement System. It is not as if they were left with no retirement, but once joining the Public Employees Retirement System they were bound by the rules and regulations thereof. Certainly, once they qualified for the judicial system they immediately switched to that system, because it did not have the restrictions of the Public Employees Retirement System of being computed on the basis of salary and number of years service to the government. Instead, judges would join the judicial system and have their pension based on 75% of their salary at the date of retirement with a continuing increase in that pension as the salary increased except as provided in W.Va.Code § 51–9–6(c) (1981). So who are we crying for? The judges? I would hope not. They have the best of both worlds. Public employees? Certainly, because they were not fortunate enough to be able to choose between two retirement systems.

The majority opinion states as follows: "In this regard, the West Virginia Judicial Association, as amicus curiae on behalf of the petitioner, correctly notes the importance of *stare decisis* to judges who have become members of the judges retirement system in reliance upon this settled law." Bouvier's Law Dictionary defines *stare decisis* as follows: "To abide by or adhere to decided cases." It is quite obvious that *stare decisis* does not apply in the *DePond* case. Apparently the law was not settled, as *DePond* expands upon *Dostert.* If the law was settled there would be no reason to expand upon what was said in *Dostert.* Further, the only cases concerning the Judicial Retirement System as now envisioned are *Dostert, Oakley* [30] and *DePond,* and only two of the present members of this Court participated in the majority opinion in *Dostert* and none participated in *Oakley.* If the *stare decisis* law is from these cases, it is quite apparent that there is no settled law in this field as of this date.

B. *Replacement of Auditor*

The remainder of *DePond* deals with removing the executive branch of govern-

---

**30.** *Oakley v. Gainer,* 175 W.Va. 115, 331 S.E.2d 846 (1985).

ment from their statutorily authorized auditing role.

In this Court's opinion, where departments of the executive branch are not doing what we want them to do, we can take away their duties and give them to someone we appoint. In the present case, the auditor and governor were questioning the judicial pension system. The auditor was attempting to perform an auditory function with respect to the judicial pensions. Such oversight was not permitted by this Court. The majority removed the auditor from all meaningful oversight roles and converted him into a rubber stamp. In his place they put the court appointed administrative director of the Supreme Court. If the auditor should attempt to stray from his perfunctory role, he will be subject to writs of mandamus and personally liable for attorneys' fees. *See* majority opin. at 382, n. 33, *supra.* The governor is also subject to writs of mandamus.

Article VII, Section 3 of the Constitution of West Virginia, when it refers to a court administrator, states as follows: "The Court shall appoint an administrative director to serve at its pleasure at a salary to be fixed by the Court. The administrative director shall, at the direction of the chief justice, prepare and submit a budget for the Court." Nowhere in the Constitution or the statutes of the State of West Virginia is the administrative director of the Supreme Court given power to administer, through maintenance and certification, the Judicial Retirement System. That authority had been granted by statute to the auditor and the governor. The *DePond* decision transfers that authority to the administrative director of the Supreme Court and states that he shall certify to the auditor the records of each justice or judge in the system as they pertain to his tenure for retirement and the auditor must accept that as absolute and certify it back to the administrative director of the Supreme Court. Why bother? The administrative director of the Supreme Court is lord and master. To have a constitutional officer, i.e., the auditor certify something without any input into what he is certifying is unbelievable and unconscionable.

The majority in *DePond* devotes at least one page of the opinion to citations stating that an administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs. As far as I know there are no written administrative procedures or rules as to the requirements necessary to establish credited judicial service. This is merely left to the whim and desires of the judge or justice submitting them and they are certified by the Court administrator and submitted to the auditor. Note 25 of *DePond* says: "Of course, for a judge to obtain certification of proof of creditable service by the administrative director of the Supreme Court of Appeals, proof of actual military and governmental service must be submitted under his rules." There being no rules, I must believe that not a single judge or justice can be certified under either *Dostert* or *DePond* to the auditor of the State of West Virginia.

I assume if you make a statement enough times, and there is no challenge of that statement, it will eventually be taken as a true statement. Throughout both *Dostert* and *DePond* the majority continues to set out in various phrases, forms and innuendos that the terms of the Judicial Retirement System are embodied in that system's statute. The *DePond* decision is prophetic when it says on page 380: "Terms of the retirement contract between members of the judiciary who participate in the Judicial Retirement System and the State of West Virginia are embodied in the provisions of the judges retirement system statute." That is as wrong as right is right. There are no statutes that provide a judicial retirement system as embodied in *Dostert* and *DePond.*

Justice is depicted as a lady in flowing robes, blindfolded, arms outstretched, holding the scales of justice equally. After reading *Dostert* and *DePond,* she has lowered the scales to the ground to use her hands to wipe the tears from her blindfolded eyes.

V. EPILOGUE

In the foregoing I have tried to voice my objections to the majority's actions in this

case. In truth, my disappointment with my colleagues cannot be expressed in words. This is not a case of bad law, but a parody written to look like law. It is a violation of the judicial oath to uphold the Constitution and a violation of the trust reposed in us by the people of the State of West Virginia. This case has no place in the jurisprudence of our State or our nation.

Therefore, for the reasons set forth above, I most forcefully dissent.

MILLER, Chief Justice, concurring:

I was originally disqualified from participating in *In Re Dostert*, 174 W.Va. 258, 324 S.E.2d 402 (1984), and explained the reasons for my disqualification in a statement following the majority opinion. 174 W.Va. at 280–81, 324 S.E.2d at 424.[1] The pension issue discussed in *Dostert* was again considered in *Oakley v. Gainer*, 175 W.Va. 115, 331 S.E.2d 846 (1985), by a special panel of circuit judges appointed to hear the case.[2]

One of the issues in *Oakley* was whether the widow of a deceased circuit court judge was entitled to a widow's pension from the judges' retirement system.[3] Her husband, after the *Dostert* opinion and prior to his death, had paid some $28,000 to qualify for benefits under the judges' retirement system. The special panel reaffirmed the *Dostert* opinion and held that the deceased judge's years of service in the military and as city attorney were properly credited toward his judicial pension because he had made the proper payments for this service into the judges' retirement fund before his death.

One of the arguments advanced by the Auditor in *Oakley* and utilized by the dissent in the present case is that the Auditor did not have an opportunity as an adversary to develop his position in the *Dostert* case. The special panel in *Oakley*, 175

W.Va. at 123, 331 S.E.2d at 854–55, rejected this argument stating:

"The Court noted in *In re Dostert*, 174 W.Va. at 264–65, 324 S.E.2d at 408, that '[B]ecause of their statutory duties, copies of the intervenor's petition were ordered to be transmitted to the Governor, *the Auditor*, the Treasurer, and the Attorney General, with a request that they file memoranda setting forth their positions with respect to the issues raised therein.' [Emphasis added] [Footnotes omitted]. As the Court further noted in *In re Dostert*, 174 W.Va. at 265 n. 11, 324 S.E.2d at 408 n. 11, 'In response, the Attorney General filed a memorandum on his own behalf and on behalf of the State Treasurer and *the State Auditor . . . .*' [Emphasis added]. Thus, respondent Gainer had ample opportunity to place his views on the issues presented in *In re Dostert*, and, in fact, through the Attorney General, did present those views." (Emphasis in original).

Oddly enough, the dissent makes only a peripheral reference to *Oakley* even though the author of the dissent was a member of this Court who had voluntarily recused himself along with the other justices, thus bringing about the special panel of circuit court judges. It was this special panel which had the first opportunity to decide whether to follow *Dostert*'s principles in a case involving the rights of a judge's widow to his pension, which is the identical issue in this case.

The dissent's argument about the impropriety of the justices hearing the *Dostert* case overlooks the fact that no recusal motion was made in *Dostert*. Furthermore, while it may be acknowledged that some pecuniary interest existed in *Dostert*, the subsequent special panel's decision in *Oakley* would appear to have settled this pecuniary interest issue.

In *Oakley*, this issue was raised and disposed of by the special panel under the

---

1. The basis for my disqualification was that I had testified adversely to Judge Dostert in his criminal contempt trial.

2. In *Oakley*, as explained in note 1, 175 W.Va. at 116–17, 331 S.E.2d at 847, all of the justices of this Court had individually recused themselves

and, pursuant to Article VIII, Section 2 of the West Virginia Constitution, a special panel was appointed.

3. The *Oakley* case involved claims made by several circuit court judges and the widow of Judge Arthur R. Kingdon.

"rule of necessity" which was discussed at some length in *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). In *Will,* the United States Supreme Court had the question of whether Congress could reduce certain previously enacted cost of living increases scheduled to be added to the salaries of the Supreme Court justices as well as other federal judges and federal officials. The Supreme Court in a unanimous decision held that Congress could not do so. Recognizing that the members of the Supreme Court had a pecuniary interest in the issue, the Supreme Court concluded every other federal judge would have a similar interest, so that necessity dictated the issue had to be resolved by the sitting court. *See also Wagoner v. Gainer,* 167 W.Va. 139, 279 S.E.2d 636 (1981).

Finally, the facts in this case, *Dostert,* and *Oakley* are clearly distinguishable from the pecuniary interest problem arising under the peculiar facts of *Aetna Life Insurance Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), which the dissent claims would vitiate the *Dostert* opinion. Again, the dissent fails to mention the special panel's discussion in *Oakley,* which dealt with the rule of necessity. In *Aetna Life,* the issue was whether due process was violated when a state appellate judge refused to disqualify himself on a recusal motion. The basis of the recusal motion was that the appellate judge was a party plaintiff in a similar case pending in a trial court. He had cast the deciding vote in the appellate case which favored his position in the related suit.[4] His failure to recuse himself was found to violate due process concepts.

The Supreme Court, however, made it clear that the other judges who sat with the disqualified judge were not themselves disqualified even though they might have had some interest in the disqualified

judge's underlying suit. The Supreme Court pointed out that if every judge in the state were disqualified, then "it is possible that under a 'rule of necessity' none of the judges or justices would be disqualified. *See United States v. Will,* 449 U.S. 200, 214 [101 S.Ct. 471, 480, 66 L.Ed.2d 392, 405] (1980)." 475 U.S. at 826, 106 S.Ct. at 1587, 89 L.Ed.2d at 835. I do not believe that *Aetna Life* is applicable to the *Dostert* case and conclude the special panel correctly applied the "rule of necessity" in *Oakley.*

Returning to the merits of the present case, had I been a member of the original *Dostert* panel, I might well have disagreed with its sweep. However, several defects existed in the judges' retirement system which would have caused me to conclude that certain provisions of the applicable statutes violated equal protection concepts and, therefore, to that extent, were correctly found to be unconstitutional.

We have historically applied a two-pronged test for analyzing equal protection problems. If the issue to be analyzed is one involving a constitutional or other fundamental right, then it must be shown that there is a compelling state interest served by permitting the inequality to exist. Where there is no such constitutional or fundamental right involved, the state need only demonstrate that there is some rational basis for the unequal treatment. *See, e.g., Myers v. Barte,* 167 W.Va. 194, 279 S.E.2d 406 (1981); *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977); *Cimino v. Board of Education,* 158 W.Va. 267, 210 S.E.2d 485 (1974).

First, even though pension statutes, dealing as they do with economic matters, are subject to a rational basis test rather than a strict scrutiny test, I can find no rational

---

**4.** The appellate judge, a member of the Alabama Supreme Court, had filed a suit on his behalf and on behalf of all other state employees against Blue Cross-Blue Shield of Alabama for willful and intentional withholding of payments on valid claims. The extent of the tort of bad faith failure to pay and the right to punitive damages were key issues in the Blue Cross case and were the central issues in the case that was then pending before the Alabama Supreme Court. The Alabama Supreme Court recognized a cause of action for the willful failure to pay valid insurance claims. It also allowed for the recovery of punitive damages in a 5 to 4 decision.

basis for crediting time spent as a prosecutor as distinguished from all other public service time. In Syllabus Point 7 of *Atchinson v. Erwin*, 172 W.Va. 8, 302 S.E.2d 78 (1983), we elaborated on the rational basis test by stating:

"Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution."

*See also* Syllabus Point 4, *Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W.Va. 538, 328 S.E.2d 144 (1984). I know of no social, economic, historic, or geographic factor that calls for favored treatment for prosecutors such that when they become elected as judges, they should be the only people who are entitled to credit their time serving the public along with their judicial time.[5] Most prosecutors are not required to devote full time to their duties. W.Va.Code, 7–7–4. Thus, as part-time public officials, they are no different than city solicitors or other attorneys who are employed in public service.

Furthermore, it seems to me that the credit for military service, although presenting a much closer problem, would cut into the equal protection area because of its limited scope.[6] It was these problems that caused the majority in *Dostert* to correct them by applying the doctrine of the least intrusive remedy. 174 W.Va. at 273, 324 S.E.2d at 417. *See also Peters v. Narick*, 165 W.Va. 622, 635, 270 S.E.2d 760, 767 (1980); *Waite v. Civil Service Comm'n*, 161 W.Va. 154, 166, 241 S.E.2d 164, 171 (1977); Syllabus Point 4, *State ex rel. Alsop v. McCartney*, 159 W.Va. 829, 228 S.E.2d 278 (1976). I would have declared the involved sections to violate equal protection concepts and let the Legislature revise the judges' retirement system.

For purposes of this present case, however, different considerations are present. One and one-half years have elapsed since *Dostert* and more than one year has elapsed since the special panel's decision in *Oakley*. Some sixteen judges in reliance on these two opinions and the inactivity of the Legislature in enacting any legislation with regard to the judges' retirement system have transferred from the public employees retirement system to the judges' retirement system pursuant to W.Va.Code, 51–9–5.[7] These judges have contributed collectively a total of $418,485 into the judges' retirement system.

There is virtually unanimous agreement in other jurisdictions that when a person is required to contribute toward his public pension, he obtains a property right in the pension fund. We discussed this concept

---

**5.** This credit is found as a proviso to W.Va. Code, 51–9–6, and is as follows:

"Provided further, that if a judge of a court of record has served for a period of not less than ten full years and has made payments into the judges retirement fund as provided in this article for each month during which he served as judge, following the effective date of this section, any portion of time which he had served as prosecuting attorney in any court in this State shall qualify as years of service."

**6.** This credit is contained in the following portion of W.Va. Code, 51–9–6:

"In determining eligibility for the benefits provided by this section, any portion of the term of office of any judge of a court of record which shall have elapsed while such judge was on active duty (including leaves, furloughs, and time consumed going to his place of duty and returning to his place of residence after discharge or release from active duty) in the armed forces of the United States shall be considered as served: Provided further, that any judge who enters active duty in the armed forces of the United States during his term of office and after the effective date [June 5, 1949] of this article shall during, or within one year after such military service, pay into the state treasury all contributions required by section four [§ 51–9–4] of this article, and, by reason of such military service not deducted from his salary."

**7.** W.Va. Code, 51–9–5, enables a judge to initially decline to join the judges' retirement system and still join the system at a later date. This can be accomplished by paying the contributions he would have had to make plus interest.

at some length in *Wagoner v. Gainer*, 167 W.Va. 139, 279 S.E.2d 636 (1981), with regard to the judges' retirement fund and cited numerous authorities from other jurisdictions in support of the property right principle.[8]

What emerges in this case is that the petitioner widow seeks to obtain the derivative benefits resulting from her husband's joining the judges' retirement system following this Court's *Dostert* opinion and the special panel's decision in *Oakley*. For me, the issue is now whether the doctrine of *stare decisis* must control the result of this case. Justice Neely spoke to the essence of the doctrine of *stare decisis* in *Hock v. City of Morgantown*, 162 W.Va. 853, 856, 253 S.E.2d 386, 388 (1979):

> "Predictability is at the heart of the doctrine of *stare decisis*, and regardless of what we think of the merits of this case, we must be true to a reasonable interpretation of prior law in the area of property where certainty above all else is the preeminent compelling public policy to be served."

*See also* Syllabus Point 2, *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974); *Adkins v. St. Francis Hospital*, 149 W.Va. 705, 143 S.E.2d 154 (1965).

Furthermore, we have traditionally accorded great weight to the reliance factor in determining how far to extend the reach of an opinion for purposes of retroactivity. *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312, 41 A.L.R.4th 445 (1983); *Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 289 S.E.2d 679 (1982); *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981); *Ables v. Mooney*, 164 W.Va. 19, 264 S.E.2d 424 (1979); Syllabus Point 5, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).

---

**8.** It should be noted that *Wagoner* was decided some three and one-half years before *Dostert*. This Court pointed out in *Wagoner* that an inequality existed in the judges' retirement system by reason of the provisions relating to the prosecutor and military credits. 167 W.Va. at 152–154, 279 S.E.2d at 644–45. We held in Syllabus Points 1 and 3 of *Wagoner*:

> "1. The West Virginia Retirement System for Judges creates contractually vested property rights for retired and active participating

In summary, two cases bearing directly on the issue in the present case have been decided in favor of the petitioner's position. In the intervening years since *Dostert* and *Oakley*, the Legislature has not seen fit to alter their result by amending the judges' retirement statutes. Finally, a number of judges have in reliance on these two opinions contributed in excess of $400,000 to bring themselves into the judges' retirement system. The petitioner's husband was one of these judges who acted in reliance on the *Dostert* and *Oakley* decisions prior to his death to provide for his family's future by paying into and qualifying under the judges' retirement system. To wait until after his death to alter the law upon which he relied and to deny his widow the full benefits to which she is entitled under the judges' retirement system would not only be contrary to the established law, but would also be callous and unconscionable.

---

plan members, and these rights are enforceable and cannot be impaired or diminished by the State."

> "3. While the Legislature has the right to make reasonable alterations to the judicial pension fund, such alterations cannot impair the benefit level where there are extant statutorily-created inequities and special unfunded benefit provisions that affect the equal application of the law or the financial integrity or cost of the pension fund."